UNITED STATES GLUE COMPANY, Respondent, vs. TOWN OF OAK CREEK, Appellant.

*May 6—June 16, 1915.*

*Taxation: Situs of income: "Derived from business transacted within the state:" Sale of manufactured products outside of state: Interstate commerce: Constitutional law.*

1. The income of a domestic manufacturing corporation derived from the sale of its products, manufactured in this state, to customers in this and other states, whether delivered directly from the factory to such customers or shipped to branch houses in other states and thence delivered to customers residing outside of the state on sales made either by the home office or by the branch houses, was income "derived from business transacted and property located within the state," within the meaning of sub. 3, sec. 1087m—2, Stats. 1911.

2. The fact that the business so conducted involved transactions in interstate commerce did not affect the situs of the income; nor did the imposition by the state of a tax upon such income contravene sec. 8, art. I, Const. of U. S., conferring upon Congress the power to regulate commerce between the states.

3. That part of the income of such a corporation which was derived from goods produced and purchased outside of the state and

shipped, either directly or by way of the home office in this state,. to branch houses in other states and thence sold and delivered to customers without the state, was not attributable to business transacted within the state and was not taxable under the statute.

APPEAL from a judgment of the circuit court for Milwaukee county: J. C. LUDWIG, Circuit Judge. *Reversed.*

The plaintiff brought this action to recover the sum of $2,835.38 with interest from January 29, 1913. Plaintiff, under protest, paid this sum to defendant as income tax and claims it was in excess of the amount lawfully due from it as income tax on its income for the year 1911 and assessed in the year 1912.

The plaintiff is a corporation organized under the laws of this state and is located and has its principal place of business at Carrollville in the town of *Oak Creek,* Milwaukee county. The plaintiff conducted the business of manufacturing glue, gelatine, grease, and other products and sold these products in this and other states of the United States and in foreign countries. Its manufacturing was done at its plant in the town of *Oak Creek,* the defendant in this action. It maintained general offices at its plant in Carrollville and conducted all of its business there, except such as was conducted at its established branch business places in the cities of Boston, Massachusetts; New York City, New York; Chicago, Illinois; Cincinnati, Ohio; Richmond, Virginia; and Grand Rapids, Michigan. At these places the plaintiff carried stocks of its goods. Each place was in charge of a manager, who employed traveling men to solicit orders for goods. A part of the goods covered by orders obtained by salesmen were shipped to the purchasers from the stocks at these branches, and the rest of such orders were sent by the managers to the plaintiff's headquarters at Carrollville and the goods called for by them were shipped from the factory at Carrollville. The stock of goods at these branches was in part manufactured at the factory in Carrollville and sent to

the branch houses before sale thereof, and the rest of the goods at these branches the plaintiff purchased from manufacturers and dealers outside of this state and were shipped from the places of purchase either directly or by way of plaintiff's factory to these branches.

The parties agreed upon the material facts of the case and stipulated that in 1911 —

(1) The value of plaintiff's property within the state was $753,181.61. The value of its property within and without the state was $1,060,900.

(2) Plaintiff's income from rentals, stocks, bonds, securities, or evidences of indebtedness was $10,390.81.

(3) Plaintiff's income from its business (exclusive of the above item of $10,390.81) for 1911 was $1,279,850.71, which is designated hereafter as its business income.

(4) The state tax commission computed plaintiff's net "business income" for 1911 at $143,200. After making the deductions provided for by the law the tax commission computed plaintiff's taxable income for 1911 to be $66,576, upon which it assessed an income tax at the rate of six per cent., amounting to $3,994.56.

(5) In 1913 the tax commission made a reassessment of plaintiff's 1911 income to correct alleged errors in their assessment thereof in 1912, and upon their computation for reassessment found that $13,344 of plaintiff's net taxable income for 1911 had been omitted from the tax of 1912 and made an assessment thereon at the rate of six per cent., amounting to $700.64, which the plaintiff paid under protest and included in its demand of recovery in this action.

(6) It is also stipulated that the plaintiff's net "business income" for 1911 arising from the conduct of its business. was derived as follows:

(a) The sum of $15,999.47 was realized from the manufacture, sale, and delivery of goods from its factory to customers residing in the state of Wisconsin.

(b) The sum of $65,103.26 was realized from the manu-

facture, sale, and delivery of goods from its factory to customers residing outside of the state of Wisconsin.

(c) The sum of $31,336.86 was realized from the manufacture of goods at the factory, sent to branch houses outside of Wisconsin, and the sale and delivery of such goods from the branch houses to customers residing outside of the state of Wisconsin.

(d) The sum of $11,444.75 was realized from the purchase of goods in the market outside of the state of Wisconsin and shipped from the place of purchase either directly or by way of plaintiff's plant at Carrollville to its branch houses, and the sale and delivery of such goods to customers residing outside of the state of Wisconsin.

The trial court adopted the facts as stipulated by the parties as its findings of fact in the case, and as conclusions of law held that plaintiff's taxable income for the year 1911 under the provisions of secs. 1087m—1 to 1087m—30, Stats. 1911, inclusive, was $10,390.81 income derived from rentals, stocks, bonds, securities, and evidences of indebtedness, and $15,999.47 of the income derived from conducting the business specified and described in the foregoing classes (a), (b), (c), and (d) as "business income," and that the income tax lawfully due thereon was the sum of $1,055.61, which tax was paid by plaintiff on the 29th day of January, 1913; that plaintiff was unlawfully required to pay the sum of $2,835.38 in excess of the lawful amount due as income tax; and the court awarded plaintiff judgment for the recovery of $2,835.38 with interest thereon from January 29, 1913. From such judgment this appeal is taken.

For the appellant there were briefs by *H. J. Killilea,* attorney, and the *Attorney General* and *Walter Drew,* deputy attorney general, of counsel, and oral argument by *Mr. Killilea.*

For the respondent there was a brief by *Lines, Spooner, Ellis & Quarles,* and oral argument by *George Lines.*

SIEBECKER, J.    The Income Tax Law of 1911 provides:

"There shall be assessed, levied, collected and paid a tax. upon incomes received during the year ending December 31, 1911. . . ."    Sec. 1087m—1, Stats. 1911.

"The tax shall be assessed, levied and collected upon all income, not hereinafter exempted, received by every person residing within the state, and by every nonresident of the state upon such income as is derived from sources within the state . . . ; provided, that any person engaged in business within and without the state shall, with respect to income other than that derived from rentals, stocks, bonds, securities or evidences of indebtedness, be taxed only upon that proportion of such income as is derived from business transacted and property located within the state, which shall be determined in the manner specified in subdivision (e) [of subsection 7] of section 1770b, as far as applicable."    Sub. 3, sec. 1087m—2, Stats. 1911.

The taxability of the income derived from rentals, bonds, etc., is not in controversy.    All parties agree that the tax commission properly taxed this item of $10,390.81.

The defendant, the town of *Oak Creek,* contends that the court erred in holding that the part of the plaintiff's net "business income," denominated class (a) in the foregoing statement, which is derived from the manufacture, sale, and delivery of its products at its plant in Carrollville to customers in the state of Wisconsin, only, is subject to be taxed as income under the foregoing provisions of the Income Tax Law.    On the part of the plaintiff it is claimed that the judgment of the trial court is correct, upon the ground that the net "business income" derived by plaintiff from the manufacture, sale, and delivery of its goods to customers in this state constitutes the net income derived from business transacted and located within this state in the sense of this law, and that the "business income" derived from goods sold to customers outside of the state, whether manufactured at and shipped from its factory at Carrollville or purchased outside of this state and then delivered from its branch houses, was.

derived from transactions in interstate commerce and there-
fore not taxable, because it is a burden on such commerce and
is repugnant to sec. 8 of art. I of the constitution of the
United States, whereby is conferred on Congress the power
"to regulate commerce with foreign nations, and among the
several states, and with the Indian tribes."

The question naturally arises, first, what portion of plaint-
iff's net "business income" is income "derived from business
transacted and property located within the state," and sub-
ject to the tax upon incomes? We are of the opinion that
this provision of the statute includes all of plaintiff's net
"business income" derived from the manufacture, sale, and
delivery of such of its products as were manufactured at,
sold, and delivered from the factory to customers in Wiscon-
sin and other states, and the net "business income" of its
products which were manufactured at its factory at Carroll-
ville and shipped from there to its branch houses out of the
state and delivered from there to customers residing outside
of the state, on sales made either at Carrollville or at
the branch houses. The trial court held that the net "busi-
ness income" of the sales of the latter class (embraced in
classes (b) and (c) of the foregoing statement) was not sub-
ject to an income tax, because such portion of plaintiff's in-
come is not "derived from business transacted and property
located within the state." This court in *State ex rel. Arpin
v. Eberhardt,* 158 Wis. 20, 147 N. W. 1016, had under con-
sideration the provisions of these statutes involving this
question and interpreted them to the effect that the income of
a person residing in the state, other than that derived from
rentals, stocks, bonds, securities, and evidences of indebted-
ness, is taxable if derived from sources within the state, and
income derived from sources without the state is not taxable
under the statutes. The plaintiff's business enterprise, in
the light of the income statutes, must be considered in a two-
fold character as respects income producing. In its cor-

porate existence it is a unit, with its principal business and
headquarters located at Carrollville.   In its business aspects
it is divided into two parts, one located and conducted at its
headquarters at Carrollville and the other located and con-
ducted at its branches in the designated cities of other states.
It is well understood that many elements of business other
than the use of capital or the service of employees to perform
the necessary labor enter into the production of an income in
the sense involved in taxation, and that the sources of such in-
come are not absolutely separable one from the other.   The
observations of the court in *Wilcox v. County Comm'rs,* 103
Mass. 544, are enlightening and helpful.   Income in the
sense of tax laws is not the capital or stocks of goods in which
the capital may be expended:

"It is the net result of many combined influences: the use
of the capital invested; the personal labor and services of the
members of the firm; the skill and ability with which they
lay in, or from time to time renew, their stock; the careful-
ness and good judgment with which they sell and give credit;
and the foresight and address with which they hold them-
selves prepared for the fluctuations and contingencies affect-
ing the general commerce and business of the country."

The statute is to receive a practical interpretation.   This
court recently said on the subject:

"Philosophical and logical distinctions must yield to the
clearly expressed intent of the written law and to the possi-
bility of a practical administration thereof."   *State ex rel.
Manitowoc Gas Co. v. Wis. Tax Comm., ante,* p. 111, 152
N. W. 848.   "If an income be taxed the recipient thereof
must have a domicile within the state, or the property or
business out of which the income issues must be situated with-
in the state so that the income may be said to have a situs
therein. . . . The Income Tax Law does not seek to reach
property or an interest in property as such, but to reach in-
comes having a situs in the state, or growing out of a privi-
lege exercised or occupation conducted within the state."
*Ibid.*

The plaintiff, as recipient of its corporate income, what-ever its source, has a domicile in this state, and the principal part of its property and its business which is employed in the transactions out of which the income issues is located in this state. The statute seeks to tax the part of this income which has its source in this state. The fact that the business so conducted may involve transactions in interstate commerce cannot affect the situs of the income. Nor does the fact that goods manufactured at Carrollville are sold without the state affect the source of the income. The income so derived is the result of the business carried on at Carrollville in this state. The place of sale of such products does not change the place of business from this to the state where the goods are sold. The statute does not contemplate such a result and clearly intends that the source of the income is at the place where the business is carried on. The transactions involved in producing the products at the plant at Carrollville and disposing of them through intrastate or interstate transactions are in substance and effect transacting business in this state, and the shipping and delivery of such goods on sales made at home or abroad, from either the factory or branch houses to which they had been shipped before sale, are no more than incidents in transacting the business of supplying the articles to customers in their finished state. We cannot, in the light of the nature of the general conduct of the business, assent to the claim that the shipping and delivery of goods, manufactured at the plant, from branch houses are the controlling elements of such transactions and that they give such business a situs without the state. The manufacture, the management, and the conduct of the business at the home office are the controlling features in the process of disposing of the article produced at the factory and constitute the source out of which the income issues and give it a situs within the state under the Income Tax Law.

The income derived from goods which were produced and

purchased outside of the state and shipped, either directly or by way of plaintiff's factory at Carrollville, to plaintiff's branch houses and thence sold and delivered to customers without the state, is clearly a separable class of plaintiff's business. Such business is transacted and located without the state, excepting incidental management from and accounting for the result thereof to plaintiff's principal office at Carrollville. The carrying on of this part of the trade, according to the findings of fact, produced an income which issued out of the business and property located without the state. Under the facts and circumstances showing the manner of conducting this part of the plaintiff's business, it must be held that the income derived therefrom is attributable to the business conducted without the state and hence not taxable under the law.

The plaintiff contends that the judgment of the trial court must stand, because all income of the plaintiff derived from business conducted in this state, except that portion derived from goods sold to customers in this state, is derived from transactions in interstate commerce, and the imposition of a tax on such income is repugnant to plaintiff's rights under sec. 8 of art. I of the constitution of the United States, providing that: "The Congress shall have power: To regulate commerce with foreign nations, and among the several states, and with the Indian tribes." The defendant urges that there is no such conflict between the powers thus granted to Congress and the powers exerted by the legislature under the state Income Tax Law. The power of a state to tax its people and their property in all the recognized ways of levying and collecting taxes is an acknowledged attribute of its sovereignty, which it may exert to the fullest extent for the purpose of providing revenue to defray the expenses of conducting the government. In exerting this governmental function it is not permitted to levy and collect taxes on any instrumentalities or property employed by the federal govern-

ment to carry its powers into execution. *McCulloch v. Maryland,* 4 Wheat. 316, and subsequent cases.

" . . . No state has the right to lay a tax on interstate commerce in any form, whether by way of duties laid on the transportation of the subjects of that commerce, or on the receipts derived from that transportation, or on the occupation or business of carrying it on, and the reason is that such taxation is a burden on that commerce, and amounts to a regulation of it, which belongs solely to Congress." *Leloup v. Port of Mobile,* 127 U. S. 640, 648, 8 Sup. Ct. 1380.

The foregoing is the conclusion as stated by BRADLEY, J., who delivered the opinion for the court, and he cites thereto a large number of cases. This established doctrine is followed in many subsequent cases. The question had received extensive examination and elaboration in *Philadelphia & S. S. Co. v. Pennsylvania,* 122 U. S. 326, 7 Sup. Ct. 1118, involving a tax imposed by the state of Pennsylvania on gross receipts of a steamship company conducting an interstate traffic, which was held a burden on interstate commerce and hence repugnant to the exclusive power of Congress to regulate such commerce. BRADLEY, J., delivered the opinion of the court in this case also, in which he discussed at length the reasons and grounds of the conclusion reached, namely, that the tax on the gross receipts of such business, as such, is a tax on such business, because " . . . they were received for transportation. No doubt a shipowner, like any other citizen, may be personally taxed for the amount of his property or estate, without regard to the source from which it was derived, whether from commerce, or banking, or any other employment. But that is an entirely different thing from laying a special tax upon his receipts in a particular employment." In a part of the opinion this learned jurist answers for the court the claim made that the tax in question was in the nature of an income tax, and declares that:

"It is not a general tax upon the incomes of all the inhabitants of the state; but a special tax on transportation com-

panies. . . . As a tax on transportation . . . it cannot be supported where that transportation is an ingredient of interstate or foreign commerce, even though the law imposing the tax be expressed in such general terms as to include receipts from transportation which are properly taxable."

The result of the court's consideration of the question led. it to declare that:

"The corporate franchises, the property, the business, the income of corporations created by a state may undoubtedly be taxed by the state; but in imposing such taxes care should be taken not to interfere with or hamper, directly or by indirection, interstate or foreign commerce, or any other matter exclusively within the jurisdiction of the federal government."

The laying and collecting of an income tax by a state imposes a burden on its citizens wholly unlike a tax upon their business or commerce. The tax in question does not refer to nor is it in the nature of a tax burden laid on the business, the gross receipts, or the property employed in interstate commerce. In fact the tax deals only with that part of the fruits of such commerce which remains as the net proceeds after all the immediate burdens of the commerce have been discharged and such net profits are merged in the assets of the corporation. The income tax is in effect not unlike the tax which was imposed on corporations under the act of Congress in the Tariff Act of 1909 and known as the "Corporation Tax." This law imposed a tax on incomes of corporations from *all sources*. In the case of *Flint v. Stone Tracy Co.* 220 U. S. 107, 31 Sup. Ct. 342, it was urged upon the court that this tax was invalid because the income taxed was in part derived from business of corporations engaged in interstate commerce. The court held that the burden imposed was " . . . a tax upon the doing of business with the advantages which inhere in the peculiarities of corporate or joint-stock organizations of the character described." The act involved incomes derived from business transactions involving

interstate commerce under the exclusive control of the federal government and from sources which were nontaxable under the constitution and laws of the federal government, and the claim was pressed upon the court that these features of the act invalidated the tax on income derived from such sources.    But the court rejected the contention, declaring:

"It is therefore well settled by the decisions of this court that when the sovereign authority has exercised the right to tax a legitimate subject of taxation, as an exercise of a franchise or privilege, it is no objection that the measure of taxation is found in the income produced in part from property which of itself considered is nontaxable.    Applying that doctrine to this case, the measure of taxation being the income of the corporation from all sources, as that is but the measure of a privilege tax within the lawful authority of Congress to impose, it is no valid objection that this measure includes, in part at least, property which as such could not be directly taxed."    Page 165.

We are of the opinion that the tax imposed by the Income Tax Law of this state does not impose a burden on the business or property of plaintiff in any sense repugnant to its rights under the provision of the federal constitution conferring on Congress the right to regulate commerce between the states, and that the trial court erred in holding that the income tax imposed by the tax commission was excessive and in awarding recovery for the amount of such alleged excess with interest.

*By the Court.*—The judgment appealed from is reversed, and the cause remanded to the circuit court with direction to award judgment dismissing plaintiff's complaint.

BARNES, J., dissents.