INTERNATIONAL ELEVATOR COMPANY, a Corporation, Appellant, v. T. H. THORESEN as Tax Commissioner of the State of North Dakota, a Public Corporation, Respondent.

(228 N. W. 192.)

Opinion filed December 6, 1929.

*J. C. Adamson* and *S. W. Thompson,* for appellant.

*I. A. Acker,* State Tax Commissioner, and *C. C. Converse,* for respondent.

## Statement.

BIRDZELL, J. The plaintiff, a foreign corporation licensed to do business in North Dakota, paid certain income taxes for the fiscal years ending July 1, 1924, 1925, and 1926. Subsequently, in March and October, 1927, it presented successively two sets of amended returns and applied to the tax commissioner for revision of the tax according to such returns. The tax commissioner revised the assessment for the years ending July 1, 1925, and July 1, 1926, acting upon the second amended return, but declined to revise the assessment for 1924 on the ground that the two-year limitation contained in § 38 of chapter 312 of the Session Laws of 1923 had run. Within thirty days after the notice of redetermination the plaintiff served a summons and complaint upon the defendant as tax commissioner, complaining of the failure of the defendant to refund the entire income taxes assessed for the years

in question, the proceeding obviously resorted to being what is denominated in the statute, § 39 of chapter 312, Session Laws of 1923, an appeal for judicial review of the proceedings. After a hearing in the district court of Burleigh county, a judgment of dismissal was entered in favor of the defendant and from this judgment the plaintiff appeals to this court.

In the complaint the plaintiff alleges that it is a Minnesota corporation engaged principally in the buying and selling of grain, buying the same in the states of North Dakota, Minnesota, and elsewhere and selling it outside of North Dakota, principally on the grain exchanges in Minneapolis, St. Paul and Duluth. It alleges the payment under protest for the years mentioned of sums aggregating $5,499.14 and that it made timely demand upon the tax commissioner for revision and refund of amounts exacted from it for each of these years, supplementing its demand with a showing in writing; that the tax commissioner made certain refunds for the years involved amounting to $1,047.96, but denied the plaintiff's demand as to the balance claimed in the sum of $4,452.08. It alleges that it has been compelled to submit to the defendant a report showing its gross and net annual income from its business both within and without the state and the allocation of the same on a property and business basis; that it has been denied the right to segregate its North Dakota business and have the tax computed upon its North Dakota business; that the statutes under which the defendant has exacted payments from the plaintiff are unconstitutional and void in that they deprive the plaintiff of property without due process of law and that imposts and duties are levied contrary to § 10 of the Constitution of the United States; that the statutes, as construed and enforced by the defendant, deprive the plaintiff of equal protection of the laws; that in computing the taxable net income in the manner alleged the defendant has discriminated between lessees of grain elevators within and without the state and the owners of such elevators within and without the state, denying to the plaintiff the equal protection of the laws; that the taxes constitute an unlawful burden and charge upon interstate commerce; that the various provisions of chapter 312 of the Laws of 1923—in particular § 8 of said act—pertaining to "allocation in special cases" are unconstitutional in that they involve a redelegation

to the defendant of legislative power which under the state constitution is vested solely in the legislative assembly.

The answer alleges substantially the filing of the annual returns for each of the years in question by the plaintiff and the payment concurrently therewith of the amount of the tax as shown by the return to be owing; that the payments were voluntarily made without protest; that the returns did not comply with chapter 312 of the Session Laws of 1923; that on March 21, 1927, the plaintiff filed with the defendant amended returns for each of the years in question and an application for refund of all money previously paid; that such amended returns did not comply with the provisions of the law; that on October 10, 1927, further amended returns were filed which complied with the provisions of chapter 312, Session Laws of 1923; that in acting thereon the defendant ascertained that the plaintiff was entitled to have refunded certain amounts for the years ending July 1, 1925, and July 1, 1926, aggregating $1,047.96, which refund the plaintiff accepted and received; that the defendant rejected the application for refund or revision of the tax for the year ending July 1, 1924, for the reason that the same was not made before the expiration of two years from the date of the filing of the original return.

The cause was submitted on the amended returns and stipulated facts. The facts so stipulated are that the plaintiff, a foreign corporation, operates a line of elevators about half of which are in the state of Montana and the other half in North Dakota; that its income is derived chiefly from the sale outside of North Dakota of grain purchased at its elevators in both states; that there are some receipts derived from storage and elevator charges and from the sale of coal and some other incidental sources as shown by the returns; that returns and amended returns or reports were submitted and payments and refunds made as above indicated; that the defendant notified the plaintiff that the amended returns filed in March, 1927, did not comply with the statute and that no determination of the tax could be made therefrom; that in July, 1927, a conference was held as to the manner of report by the plaintiff at which the defendant informed the plaintiff that the original returns were incomplete and that a request for a refund (except as to the year 1924) would be entertained when the statute was strictly complied with as to the manner of filing returns, and that in

accordance with these suggestions the plaintiff filed its second amended return on October 10, 1927; that on December 14, 1927, the defendant gave notice to the plaintiff of the making of an order denying a refund in any amount for the year 1924, denying a refund for the year 1925 except as to the sum of $907.62, denying a refund for the year 1926 except as to the sum of $140.34, which refunds aggregated $1,047.96, and which amount was found due the plaintiff on the second amended return; that the total amount paid for the years 1924, 1925, and 1926 was $5,499.14; that the amount of the refund to the plaintiff was paid and not accepted by the plaintiff as a settlement in full of its demands; that twenty-seven days after notice of defendant's order the plaintiff served the summons and complaint in the instant action. It is further stipulated that at least 90 per cent of the plaintiff's gross sales in each of the years 1924, 1925 and 1926 was made in states other than North Dakota.

In addition to the stipulated facts the returns were offered in evidence. The objections urged to the tax may be better understood upon a partial analysis of these returns. For purposes of illustration, we use the returns for the fiscal year ending in July, 1925. The gross income of the corporation was placed at $7,152,656.66. During the year it had purchased merchandise for sale at $6,334,812.64. There was another inventory item of $6,798.53. After subtracting its inventory from its gross sales, it showed a gross profit of $805,765.63. Other small items brought its gross income to $808,619.72. From this there was subtracted for various expenses and depreciation the sum of $559,104.61, leaving a net income subject to apportionment of $249,515.11. This was apportioned on the basis of the ownership of tangible property owned in connection with the business both within and without North Dakota. The schedule showed a total value of this property of a little over $502,000. It showed a little more than half of the property in value to be located in North Dakota and 50 per cent of the income was accordingly apportioned to this state, there being no computation based upon wages, salaries, amounts paid for the purchase of goods and receipts from sales and other business sources, such as the statute directs to be taken into consideration. The tax as so computed and paid was $3,545.60. The first amended return filed in March, 1927, did not show the gross income of the taxpayer. It showed only gross profits and

income received from sales at North Dakota elevators, storage, elevator charges, interest and rents, a total of $15,564.36. There were listed for deduction various expenses including agents' salaries and expenses of stations, aggregating $101,441.02. According to this showing the company had a deficit of $85,876.66 and, consequently, no net income subject to tax in North Dakota. Upon the tax commissioner declining to redetermine the tax according to this return, there was filed on October 10, 1927, a return showing the same net business income subject to apportionment, as was shown by the first return filed, $249,515.11. The apportionment schedule showed about the same proportionate ownership of property used in connection with the business within and without the state as was shown by the first return, the ratio being 49.46 per cent in North Dakota. In round numbers wages and salaries paid in North Dakota were $51,000 and without North Dakota $72,000; amounts paid for purchases of goods in North Dakota $3,000,000 and without North Dakota $3,000,000; receipts from sales and other business sources in North Dakota $83,000 and without North Dakota $6,800,000. The ratio of the combined items of wages, etc., amounts paid for purchase of goods, etc., receipts from sales, etc., within North Dakota to the total was 24.13 per cent. The average of the two ratios was 36.79 per cent. According to this the net income was apportioned to the state, making a tax of $2,937.98, the difference between the tax computed according to this return and the first return being $607.62. (The tax commissioner, whether through error does not appear, granted a refund of $907.62.)

## Opinion.

BIRDZELL, J. The following are the provisions of the income tax law that bear most directly upon the issues involved in this proceeding (Sess. Laws of 1923, chap. 312):

"Section 7.

"2. If the trade or business of the corporation is carried on entirely within the state, the tax shall be imposed on the entire business income, but if such trade or business is carried on partly within and partly without the state, the tax shall be imposed only on the portion of the

business income reasonably attributable to the trade or business within the state, to be determined as follows:

• • • • • • • • • • • • • • • • • • • • •

"(2) Where income is derived from the manufacture or sale of tangible personal property, the portion thereof attributable to business within the state shall be taken to be such percentage of the total of such income as the tangible property and business within the state bear to the total tangible property and total business, the percentage of tangible property and of business being separately determined as hereinafter provided, and the two percentages averaged.

• • • • • • • • • • • • • •

"The business of the corporation shall be measured by the amount which the corporation has paid out during the year for which the income is returned for wages, salaries, or other compensation to employees and for the purchase of goods, materials and supplies consumed or sold in the regular course of business, plus the amount of all receipts during the year from sales and other sources connected with said business, excluding however, receipts from the sale of capital assets and property not sold in the regular course of business and also receipts from interest, dividends, rents and royalties separately allocated as above provided.

• • • • • • • • • • • • • • • •

"For the purpose of this subdivision, payments of wages, salaries, and other compensation shall be assigned to the office, agency or place of business of the corporation at which the employee chiefly works, or from which he is sent out or with which he is chiefly connected.

"Payments for purchases shall be assigned to the office, agency or place of business of the corporation at or from which such purchases are chiefly handled and attended to with respect to the negotiation and execution.

"Receipts from sales and other sources shall be assigned to the office, agency, or place of business of the corporation at or from which the transactions giving rise to such receipts are chiefly handled and attended to with respect to the negotiation and execution.

• • • • • • • • • • • • • • • •

"Section 8.

"(a) If any corporation believes that the method of allocation

and apportionment hereinbefore prescribed as administered by the tax commissioner and applied to their business has operated or will so operate as to subject them to taxation on a greater portion of their net income than is reasonably attributable to business or sources within the state, they shall be entitled to file with the commissioner a statement of their objections and of such alternative method of allocation and apportionment as they believe to be proper under the circumstances with such detail and proof and within such time as the tax commissioner may reasonably prescribe; and if the tax commissioner shall conclude that the method of allocation and apportionment theretofore employed is in fact inapplicable and inequitable, he shall redetermine the taxable income by such other method of allocation and apportionment as seems best calculated to assign to the state for taxation the portion of the income reasonably attributable to business and sources within the state, not exceeding, however, the amount which would be arrived at by application of the statutory rules for apportionment."

Counsel argue that the law is unconstitutional because it obviously attempts to impose a tax that the state has no jurisdiction to levy upon the proceeds of business transactions conducted without the state; that the tax is in effect a tax upon commodities exported from the state and a burden upon interstate commerce; that, apparently conceding for the purpose of this objection that the state may properly tax incomes derived from business conducted within it, the method employed in allocating the income to the state denies to the plaintiff the equal protection of the law in that it works a discrimination against it in favor of those engaged in a similar business who lease, rather than own, elevators within the state; and that the law is unconstitutional because it delegates legislative power to the tax commissioner. We shall consider these contentions in the order stated.

The plaintiff is a foreign corporation and the state, it is true, has no jurisdiction to levy an income tax upon it save as it derives income from sources within the state. Under the statute the state has clearly not attempted to exercise any jurisdiction over the plaintiff for income tax purposes except as it derives income from business transacted within the state. For this purpose the domicile of the corporation is ignored. Both domestic and foreign corporations doing business within and without the state are treated in the same manner, but as to foreign

corporations the jurisdiction asserted is in rem (Shaffer v. Carter, 252 U. S. 36, 64 L. ed. 445, 40 Sup. Ct. Rep. 221) rather than in personam. Such a jurisdiction in the state to tax has been uniformly vindicated under similar laws. In State ex rel. Manitowoc Gas Co. v. Wisconsin Tax Commission, 161 Wis. 111, 152 N. W. 848, at page 849, the Supreme Court of Wisconsin, in discussing the analogous provisions of its law, said:

"The taxing power of a state does not extend beyond its territorial limits. Union Refrigerator Transit Co. v. Kentucky, 199 U. S. 194, 50 L. ed. 150, 26 Sup. Ct. Rep. 36, 4 Ann. Cas. 493. Within such limits it may tax persons, property, incomes, or business. State Tax on Foreign-held Bonds, 15 Wall. 300, 21 L. ed. 179. If the tax be on property it, or its lawfully constituted situs, must be found within the state. If an interest in property is taxed the situs of either the property or interest must be found within the state. If an income be taxed the recipient thereof must have a domicile within the state, or the property or business out of which the income issues must be situated within the state so that the income may be said to have a situs therein."

In Shaffer v. Carter, supra, the Supreme Court of the United States had under consideration the income tax law of Oklahoma under which the complaining taxpayer, a resident of Illinois, was assessed an income tax on account of net income derived from oil property owned and incidental business conducted by him in Oklahoma. In answering the contention that the state was without jurisdiction to impose the income tax in question upon non-residents, the court said (page 50 of 252 U. S.):

". . . In our system of government states have general dominion, and,, saving as restricted by particular provisions of the Federal Constitution, complete dominion over all persons, property, and business transactions within their borders; they assume and perform the duty of preserving and protecting all such persons, property, and business, and, in consequence, have the power normally pertaining to governments to resort to all reasonable forms of taxation in order to defray the governmental expenses. Certainly they are not restricted to property taxation, nor to any particular form of excises. In well-ordered society, property has value chiefly for what it is capable of producing, and the activities of mankind are devoted largely to making recurrent

gains from the use and development of property, from tillage, mining, manufacture, from the employment of human skill and labor, or from a combination of some of these; gains capable of being devoted to their own support, and the surplus accumulated as an increase of capital. That the state, from whose laws property and business and industry derive the protection and security without which production and gainful occupation would be impossible, is debarred from exacting a share of those gains in the form of income taxes for the support of the government, is a proposition so wholly inconsistent with fundamental principles as to be refuted by its mere statement. That it may tax the land but not the crop, the tree but not the fruit, the mine or well but not the product, the business but not the profit derived from it, is wholly inadmissible.

"Income taxes are a recognized method of distributing the burdens of government, favored because requiring contributions from those who realize current pecuniary benefits under the protection of the government, and because the tax may be readily proportioned to their ability to pay."

After calling attention to the fact that several of the states imposed income taxes at about the time of the adoption of the Federal Constitution and to the fact that Chief Justice Marshall, in M'Culloch v. Maryland, 4 Wheat. 316, 4 L. ed. 579, had spoken of the power of a state to tax as one that might be exercised upon any subject brought within its jurisdiction and quoting from the opinion of Justice Brewer in Michigan C. R. Co. v. Powers, 201 U. S. 245, 50 L. ed. 744, 26 Sup. Ct. Rep. 459, to the effect that the power of taxation was limited to subjects within the jurisdiction of the state, among which subjects "are persons, property, and business" and that it might touch "business in the almost infinite forms in which it is conducted, in professions, in commerce, in manufactures, and in transportation," the court concluded as follows:

"And we deem it clear, upon principle as well as authority, that just as a state may impose general income taxes upon its own citizens and residents whose persons are subject to its control, it may, as a necessary consequence, levy a duty of like character, and not more onerous in its effect, upon incomes accruing to nonresidents from their property or business within the state, or their occupations carried on

therein; enforcing payment, so far as it can, by the exercise of a just control over persons and property within its borders. . . ."

As the law in question attempts to do no more than to levy an income tax upon income derived from business conducted in North Dakota, it is, we think, plainly, within the principles quoted above, a legitimate exercise of the taxing power of the state.

The contention that the tax is in effect a tax upon commodities exported from the state and as such a burden upon interstate commerce is, in our opinion, likewise untenable. The tax is not levied upon any property that might have entered into interstate commerce nor upon the proceeds of the sales. It is a "toll taken from the fruits of property and labor in proportion to the net value of the harvest" (State ex rel. Manitowoc Gas Co. v. Wisconsin Tax Commission, supra), and it is immaterial that the business conducted within the state may have been so conducted as to involve transactions in interstate commerce. United States Glue Co. v. Oak Creek, 161 Wis. 211, 153 N. W. 241, Ann. Cas. 1918A, 421; id., 247 U. S. 321, 62 L. ed. 1135, 38 Sup. Ct. Rep. 499, Ann. Cas. 1918E, 748. The provisions of our law are in general similar to the Wisconsin law in so far as it operates upon non-resident corporations conducting business within the state, and it may be said here, as in United States Glue Co. v. Oak Creek, supra, at page 245 of the Northwestern Reporter: "The tax in question does not refer to nor is it in the nature of a tax burden laid on the business, the gross receipts, or the property employed in interstate commerce. In fact, the tax deals only with that part of the fruits of such commerce which remains as the net proceeds after all the immediate burdens of the commerce have been discharged and such net profits are merged in the assets of the corporation." This contention was likewise urged in the Oklahoma income tax case, Shaffer v. Carter, supra, and was briefly answered by the court as follows (page 57 of 252 U. S., 64 L. ed. 458, 40 Sup. Ct. Rep. 227):

"It is urged that, regarding the tax as imposed upon the business conducted within the state, it amounts in the case of appellant's business to a burden upon interstate commerce, because the products of his oil operations are shipped out of the state. Assuming that it fairly appears that his method of business constitutes interstate commerce, it is sufficient to say that the tax is imposed not upon the gross receipts,

as in Crew Levick Co. v. Pennsylvania, 245 U. S. 292, 38 Sup. Ct. Rep. 126, 62 L. ed. 295, but only upon the net proceeds, and is plainly sustainable even if it includes net gains from interstate commerce."

The question was more elaborately treated by the United States Supreme Court in United States Glue Co. v. Oak Creek, supra, in which the judgment of the Supreme Court of Wisconsin was affirmed, and in concluding the discussion, the court said (page 329 of 247 U. S.):

"Such a tax, when imposed upon net incomes from whatever source arising, is but a method of distributing the cost of government, like a tax upon property, or upon franchises treated as property; and if there be no discrimination against interstate commerce, either in the admeasurement of the tax or in the means adopted for enforcing it, it constitutes one of the ordinary and general burdens of government, from which persons and corporations otherwise subject to the jurisdiction of the states are not exempted by the Federal Constitution because they happen to be engaged in commerce among the states."

A similar problem has confronted the Federal government in levying taxes upon incomes of domestic corporations where a portion of the income has been derived from transactions concerning which Congress is prohibited from laying any tax or duty. Under article 1, § 9, Cl. 5, no tax or duty may be laid on articles exported from any state. In William E. Peck & Co. v. Lowe, 247 U. S. 165, 62 L. ed. 1049, 38 Sup. Ct. Rep. 432, a domestic corporation engaged in buying goods in several of the states and shipping them to foreign countries and there selling them, earned a net income from this business of $30,000 in round numbers and from other sources $12,000, upon which it was required to pay to the Federal government an income tax. Though approximately two and one-half times as much income was derived from the business of buying goods in various states and exporting them to foreign countries and there selling them as was derived from all other sources, the court held that the tax was not one upon exportation from a state, saying (page 175 of 247 U. S.):

"There is no discrimination. At most, exportation is affected only indirectly and remotely. The tax is levied after exportation is completed, after all expenses are paid and losses adjusted, and after the recipient of the income is free to use it as he chooses. Thus what is

taxed—the net income—is as far removed from exportation as are articles intended for export before the exportation begins. If articles manufactured and intended for export are subject to taxation under general laws up to the time they are put in course of exportation, as we have seen they are, the conclusion is unavoidable that the net income from the venture when completed, that is to say, after the exportation and sale are fully consummated, is likewise subject to taxation under general laws. In that respect the status of the income is not different from that of the exported articles prior to the exportation."

We are not concerned here with the situs for the purpose of taxation of property which has moved in interstate commerce such as was involved in Carson Petroleum Co. v. Vial, 279 U. S. 95, 73 L. ed. 626, 49 Sup. Ct. Rep. 292, relied upon by counsel for appellant. The law in question here we consider to be well within the principle of the decisions above referred to. It does not purport to tax commodities exported from the state nor place a burden upon interstate commerce.

It is next said that the plaintiff is denied the equal protection of the law in that the method of allocating the income to the state works a discrimination in favor of those doing a similar business who lease, rather than own, elevators within the state. It was not proved upon the trial that there were any concerns doing similar business who made it a practice to lease elevators within this state while owning them elsewhere. We have no means of knowing whether the statutory method of allocation partially upon the basis of the ratio of local property to entire property owned and used in connection with the business works any actual discrimination. In the state of the record before us a hypothetical situation merely is stated under which the statutory method of allocation might result in an unfair distribution of tax burden between competing concerns. Ownership of property is only one of the factors to be taken into consideration in apportioning income and there can be no doubt that it has a legitimate bearing in effecting a fair distribution of the profits or income between various states or localities in which a corporation transacts its business. Business property is generally purchased and owned to subserve business convenience, and economic necessity requires that the investment be such only as is warranted by the business in the locality served. Normally, this economic necessity operates uniformly and without much regard to state lines

and hence the ownership of property should generally afford a just and reliable criterion in apportioning income. It might well be possible to improve the formula by capitalizing according to the rental the value of any property that is leased, but this is a matter for legislative consideration. We cannot say that the ownership of property used in connection with a business is not a proper factor to be employed in apportioning income. Nor does it work an arbitrary discrimination as between taxpayers engaged in similar business because of an inherent possibility that one taxpayer might so manage his business as to make this factor operate in his favor and escape a fair apportionment. Perfection in legislation is not expected, much less is it required in dealing with complex practical situations. Clearly, no arbitrary discrimination is made or intended. The statutory formula does not deny to the plaintiff the equal protection of the laws.

It is next argued that the power which the constitution vests in the legislature is sought to be delegated to the tax commissioner under two provisions of the law. In paragraph (1) of § 7, it is provided:

"Where income is derived from business other than the manufacture and sale of tangible personal property, or the conduct of a public utility, such income shall be specifically allocated and equitably apportioned within and without the state under rules and regulations of the tax commissioner."

The plaintiff is in no position to raise the question of the constitutionality of this provision on the ground urged, for the reason that the method therein authorized has not been applied in apportioning its income nor does the statute purport to make it applicable. Its income has been apportioned under other provisions of the statute.

Paragraph (a), § 8 of art. 2, heretofore quoted in full, provides that when any corporation believes that the method of allocation employed subjects it to taxation on a greater portion of its income than is reasonably attributable to its business or sources within the state it may file its objection and suggest an alternative method. If the tax commissioner shall then conclude that the method "employed is in fact inapplicable and inequitable, he shall redetermine the taxable income by such other method of allocation and apportionment as seems best calculated to assign to the state for taxation the portion of the income reasonably attributable to business and sources within the state, not

exceeding, however, the amount which would be arrived at by application of the statutory rules for apportionment."

The act further provides (§ 48) that if any clause, sentence, paragraph or part of the act shall for any reason be adjudged to be invalid, such judgment shall not affect, impair or invalidate the remainder of the act. Assuming, therefore, that this paragraph involves a delegation of legislative power to the tax commissioner, all the provisions under which the income is apportioned and allocated would remain. Hence, inasmuch as the tax commissioner is expressly precluded from employing any method of allocation that would cause the tax to exceed the amount fixed by applying the statutory rules for apportionment, any delegation of legislative power in this section cannot possibly operate to the prejudice of the plaintiff taxpayer. In fact, as this record shows, the plaintiff has invoked the power of the tax commissioner hereunder and has received substantial refunds. It is elementary that one whose constitutional rights are not affected by legislation cannot be heard to say that such legislation is invalid. If this provision of the act be invalid and the rest valid, it would follow that the plaintiff has been granted refunds by grace of action under an unconstitutional portion of the law and, possibly, upon a review such as this the mistake should be corrected. But the respondent is not insisting that this be done and may now be precluded from doing so.

With reference to the ruling of the tax commissioner declining to redetermine the tax for the year ending in July, 1924, on the ground that more than two years had elapsed after the filing of the original return and that he was without authority under the limitation of the statute, it clearly appears that the limitation had run. The first return was filed October 10, 1924, the first amended return March 21, 1927, and the second amended return October 10, 1927. Section 38 of chapter 312, supra, places the limitation at two years from the filing of the return or from the date of the notice of the assessment of any additional tax.

To avoid any possible misunderstanding as to the scope of this decision, we feel we should refer to the matter of the allocation of income for the fiscal year ending in July, 1925, in so far as it was affected by a comparison of sales within the state to the entire sales. According to schedule "A" of the return on which the refund for the year 1925

was based, there were gross sales of more than $7,000,000. The inventory at the beginning of the year was only about $7,000 and there had been merchandise bought for sale during the year of more than $6,000,000. In the apportionment schedule "I," it appears that about half of the merchandise bought for sale was purchased in North Dakota. Yet the receipts from sales and other business sources are, in round numbers, $83,000 within North Dakota compared with something more than $6,800,000 without North Dakota. We express no opinion as to whether or not, on the face of this return and without additional evidence, the tax commissioner was warranted in utilizing the ratio for apportionment purposes as so affected by the comparative receipts shown.

It follows from what has been said that the judgment appealed from should be affirmed. During the pendency of this action Mr. I. A. Acker has succeeded Mr. T. H. Thoresen in the office of tax commissioner and in a stipulation filed his name is substituted in this court in the place and stead of T. H. Thoresen. The name will be substituted in the judgment and the judgment affirmed.

BURKE, Ch. J., and NUESSLE, BURR, and CHRISTIANSON, JJ., concur.