No. 15,553.

CRUSE, DIRECTOR OF REVENUE ET AL. *v.* STAYPUT CLAMP
AND COUPLING COMPANY

(156 P. [2d] 397)

Decided February 2, 1945.    Rehearing denied February 26, 1945.

Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAW-RENCE HINKLEY, Deputy, Mr. GEORGE K. THOMAS, Assistant, for plaintiff in error.

Mr. CHAS. E. FRIEND, for defendant in error.

*En Banc.*

MR. JUSTICE ALTER delivered the opinion of the court.

ALBERT F. CRUSE as the director of revenue of the State of Colorado, and Leon C. Lavington as the state treasurer of Colorado, plaintiffs in error, will hereinafter be designated plaintiffs, and the Stayput Clamp and Coupling Company, a corporation, defendant in error, will hereinafter be designated as defendant. Plaintiffs sued

out this writ of error to review an adverse judgment of the district court.

Plaintiff Cruse assessed additional taxes against defendant on its income for the years 1941 and 1942 in the amount of $2,732.67 alleged to be due as a deficit under the provisions of the Income Tax Act of 1937 as amended. Defendant protested and, by appropriate statutory proceedings, appealed to the district court, denying its liability for additional assessments and claiming a refund ón account of alleged overpayment of income taxes for the years 1941 and 1942 in the sum of $2,537.44.

Upon trial in the district court, plaintiffs' claim for additional income taxes was disallowed and judgment was entered in favor of defendant and against plaintiffs for the sum of $2,537.44 found to be due on defendant's claim for refunds.

Our decision necessitates a construction, interpretation and application of section 2 (b) of the income tax statute, Session Laws of Colorado 1937, chapter 175, as applied to the business activities of defendant, and a determination as to whether defendant's business activities are such as to entitle it to the allocation of its net income as provided in sections 16 and 17 of the income tax statute, Session Laws of Colorado 1937, chapter 175.

Section 2 (b) reads as follows: "Corporations shall pay annually a tax with respect to carrying on or doing business at the rate of 4 per cent on the entire net income, as herein defined, derived from property located and business transacted within this state during the taxable year."

This and other sections of the Income Tax Act of 1937 were amended in 1943, but these amendments in no wise pertain to the issues herein, and, consequently, are wholly disregarded for the purposes of this decision.

Section 16 reads as follows: "In the case of nonresident individuals whose gross income is from sources in part within and in part without the state, and corporations the gross income of which is derived from prop-

erty located and business transacted in part within and in part without this state, direct allocation of such income may be made where practicable on the books of account and records of the taxpayer, together with the deductions applicable thereto, where such methods clearly reflect the net income and returns made on such basis shall be declared and accepted subject to the approval of the State Treasurer."

Section 17 reads as follows: "In any case where the nature of the business is such as to render direct allocation impracticable or where the books of account and records do not clearly reflect the net income subject to tax by this Act, allocation shall be made as follows: (a) interest, dividends, rents, royalties, and other similar items of gross income, less related expenses, shall be allocated to this state if received in connection with business transacted and property located within this state. (b) gains or losses from the sales of capital assets located within this state except those held for sale in the regular course of business, shall be allocated to this state. (c) The remainder of the income not allocable under (a) and (b) shall be allocated by taking the arithmetical average of the following factors: (1) The ratio of the average adjusted basis as defined in Section 12, at the beginning and end of the taxable year of the real and tangible personal property owned and located in connection with the business carried on within this state, to the average adjusted basis at the beginning and end of the taxable year of the total real and tangible personal property owned and used in connection with the business carried on everywhere; (2) The ratio of the revenue or the gross sales delivered within this state excluding deliveries for transportation out of the state and revenue for services rendered in this state during the taxable year, excluding, however, any income received from the sale of capital assets and other property not sold in the regular course of business, and also income from interest, dividends, rents and royalties, sepa-

rately allocated as above provided, to the gross sales or revenues from business carried on and services rendered everywhere during the taxable year."

The factual situation with reference to defendant and its business operations in 1941 and 1942 was not in dispute and may be briefly stated as follows:

Defendant was a Colorado corporation and maintained its only office and manufacturing plant at Denver, Colorado. All of its property was located in Colorado, and it had no inventory or stock of goods located elsewhere. It received and accepted orders in Denver, Colorado, from its representatives, brokers, agents, wholesalers, and customers, as they were variously called, and these orders were filled by selecting goods from its stock in Denver, Colorado, and packing and shipping the same by common carrier from Denver, Colorado, to the destination, sometimes c.o.d., sometimes on open account, sometimes f.o.b. Denver, sometimes f.o.b. destination. If the order came from a representative, broker, agent, or wholesaler, the invoice was based on a catalog price list provided by defendant, and the only financial advantage of the representative, broker, agent, or wholesaler was in the price which was charged the customer. If the defendant made the shipment direct to the customer on his order, the representative, broker, agent, or wholesaler was credited and paid a commission thereon by defendant.

The 1941 income tax report filed by defendant on blank forms provided by the department of revenue disclosed a total net income of $52,469.49. Using the formula provided in section 17 of the income tax statute, defendant allocated as taxable net income in Colorado the sum of $29,361.93 and paid a four per cent tax thereon in the sum of $1,174.48. The balance of the net income for 1941, i.e., $23,107.56, defendant claimed was nontaxable in Colorado.

Upon a hearing before plaintiffs, as provided by statute, it was determined that defendant's entire net in-

come for 1941, in the sum of $52,469.49, was taxable as net income in Colorado. The tax due from defendant by reason of its total 1941 net income, as determined by plaintiffs, was $2,098.78. Defendant had paid a 1941 net income tax of $1,174.48, which left, according to plaintiffs' calculation, a deficit of $924.30 upon which there was accrued interest in the sum of $106.29, making a total deficit in defendant's tax payment for the year 1941 of $1,030.59.

The 1942 income tax report filed by defendant on blank forms provided by the Department of Revenue disclosed a total net income of $90,678.45. Using the formula provided in section 17 of the income tax statute, the defendant allocated as taxable net income in Colorado the sum of $50,344.68 and paid a four per cent tax thereon in the sum of $2,013.79. The balance of the net income for 1942, i.e., $40,333.77, defendant claimed as nontaxable in Colorado.

Upon a hearing before plaintiffs as provided by statute, it was determined that defendant's entire net income for 1942, in the sum of $90,678.45, was taxable as net income in Colorado. The tax due from defendant by reason of its total 1942 net income, as determined by plaintiffs, was $3,627.14. Defendant had paid a 1942 net income tax of $2,013.79, which left, according to plaintiffs' calculation, a deficit of $1,613.35 upon which there was accrued interest in the sum of $88.73, making a total deficit in defendant's income tax payment for the year 1942 of $1,702.08.

The total deficits for the years 1941 and 1942 were $2,732.67, for which plaintiffs demanded judgment.

Defendant took the position that the formula method prescribed by sections 16 and 17, supra, of the income tax statute, resulted in an arbitrary, unreasonable and inequitable burden upon it, and therefore it contended that it was entitled to a refund based upon the following: Its gross sales for 1941 were $197,936.26, of which $23,597.33 only was realized from sales completed by

delivery in Colorado to Colorado purchasers. It was, therefore, the contention of defendant that its net income tax should have been based on the net income derived from gross sales in Colorado of $23,597.33 and the tax on the net income so derived would have been but $251.85. Defendant paid an income tax in 1941 of $1,174.48 and therefore contended that it was entitled to a refund of $922.62 by reason of its overpayment of taxes for that year.

Its gross sales for 1942 were $272,664.60, of which $30,065.63 only was realized from sales completed by delivery in Colorado to Colorado purchasers. It was, therefore, the contention of defendant that its net income tax should have been based on the net income derived from gross sales in Colorado of $30,065.33 and the tax on the net income so derived would have been but $398.98. Defendant paid an income tax in 1942 of $2,013.79 and therefore contended that it was entitled to a refund of $1,614.81 by reason of its overpayment of taxes for that year.

Judgment was entered in defendant's favor for $2,537.44, which was the amount which it contended it had overpaid on its 1941 and 1942 income taxes.

The first question for determination is whether the entire income of defendant is income *"derived from property located and business transacted within this state"* as that term is used in section 2 (b). If it should be determined that the entire net income is "derived from property located and business transacted within this state," a consideration of sections 16 and 17 of the income tax statute will be unnecessary for a complete determination of this cause.

We have examined and considered all of the authorities cited by plaintiffs and defendant and have arrived at the conclusion that the decisions most helpful to a correct solution of the questions involved here are found in Georgia and Wisconsin, where the statute (section 2

[b] is, if not identical, so similar as to be undistinguishable.

In *Montag Brothers Inc. v. State Revenue Commission,* 50 Ga. App. 660, 179 S.E. 563, affirmed 182 Ga. 568, 186 S.E. 558, the statute involved read: "Section 4. Corporations. Every domestic corporation, and every foreign corporation, shall pay annually an income tax equivalent to 4% of the net income from property owned or from business done in Georgia, as is defined in section 15 of this Act." Montag Brothers, Inc., a stationery manufacturer, had its only office, factory and plant in Atlanta, Georgia, although it maintained a branch office in New York and sample rooms elsewhere, and employed many salesmen who worked out of its branch office or salesroom. All of these, however, were managed and directed from the Atlanta office. All orders for merchandise were shipped from the Atlanta office, all prices were fixed, and all payments were received there. It was conceded that the revenue derived from these sources was taxable in Georgia. However it was contended that Montag's sales to wholesale drug companies and department stores were not taxable as income in the state. The distinction with reference to sales to wholesale drug and department stores arose due to the fact that samples were submitted to the buyers for these companies and orders were prepared in duplicate, which contained the notation "Subject to confirmation." The original of these orders was sent to Atlanta, and if and when the duplicate was approved by the buyers' executive, Montag would be notified in Atlanta, and the goods would be shipped therefrom, some f.o.b. Atlanta, others f.o.b. destination. The court held that the net income derived from sales to wholesale drug and department stores, as well as all other net income of the corporation, was taxable as net income from "property owned or from business done in Georgia." The Georgia statute had allocation provisions

very similar to sections 16 and 17 of our income tax statute.

In connection with the proper interpretation and construction of section 4 of the Georgia statute, it was said: "The tax being thus imposed upon the 'net income from property owned' in the State as well as 'from business done' in the State, where, as under the stipulated facts of this case, a domesticated corporation maintained its only office and place of business in this State, owned and manufactured all its goods therein, and received therein all the proceeds from its sales made within and without the State, all from its State-owned plants and products manufactured in this State, and all from its State-owned property and State-managed business and office, from which it merely sent out samples and operated a subordinate sales office with office equipment and salesmen out of the State under the control of its State office and an executive living within the State, its entire net income from these sales would be subject to the tax, whether it be deemed a resident corporation, or a nonresident corporation with the right of invoking the inhibitions of the Fourteenth amendment to the Federal constitution, since neither the imposition by the statute nor the collection of such a tax would contravene that amendment. The fact that part of the sales were made in interstate commerce, or that the title to some of the goods may have passed to purchasers outside the State, or even that some of the sale contracts might be taken as made outside the State (construing in favor of the taxpayer the ambiguous stipulation in regard to the time and place of 'confirmation' and the closing of sales), would not relieve the seller from tax upon the net earning from such sales, where the manufacturing plant was located, the products were manufactured and owned, the shipments and payments were made, and every important step connected with the manufacture, distribution, sales, collection, and earnings occurred in Georgia. * * *"

In *United States Glue Co. v. Town of Oak Creek,* 161
Wis. 211, 153 N.W. 241, affirmed 247 U.S. 321, 38 Sup.
Ct. 499, 62 L.Ed. 1135, the Wisconsin income tax statute,
as the same applied to the business operations of plain-
tiff, was before the court for construction.

The pertinent provision of the Wisconsin act in ques-
tion was section 1087m-2, sub. 3, Stats. 1911, reading:
"The tax shall be assessed, levied and collected upon all
income, not hereinafter exempted, received by every
person residing within the state, and by every non-
resident of the state upon such income as is derived
from sources within the state: * * * Provided, that
any person engaged in business within and without the
state shall, with respect to income other than that de-
rived from rentals, stocks, bonds, securities or evidences
of indebtedness, be taxed only upon that proportion of
such income as is derived *from business transacted and
property located within the state, which shall be deter-
mined in the manner specified in subdivision (e)* [*of
subsection 7*] *of section 1770b, as far as applicable.*"
(Italics ours)

The question before the court was, what part of the
income of the corporation derived from the following
described sources was taxable as income derived "from
business transacted and property located within the
state."

"The plaintiff, as recipient of its corporate income,
whatever its source, has a domicile in this state, and the
principal part of its property and its business which is
employed in the transactions out of which the income
issues, is located in this state. The statute seeks to tax
the part of this income which has its source in this
state. The fact that the business so conducted may in-
volve transactions in interstate commerce cannot affect
the situs of the income. Nor does the fact that goods
manufactured at Carrollville are sold without the state
affect the source of the income. The income so derived
is the result of the business carried on at Carrollville in

this state. The place of sale of such products does not change the place of business from this to the state where the goods are sold. The statute does not contemplate such a result, and clearly intends that the source of the income is at the place where the business is carried on. The transactions involved in producing the product at the plant at Carrollville and disposing of them through intra and interstate transactions is in substance and effect transacting business in this state, and the shipping and delivery of such goods on sales made at home or abroad, from either the factory or branch houses, to which they have been shipped before sale, are no more than incidents in transacting the business of supplying the articles to customers in their finished state. We cannot, in the light of the nature of the general conduct of the business, assent to the claim that the shipping and delivery of goods, manufactured at the plant, from branch houses are the controlling elements of such transactions and that they give such business a situs without the state. The manufacture, the management, and the conduct of the business at the home office are the controlling features in the process of disposing of the article produced at the factory and constitute the source out of which the income issues and give it a situs within the state under the income tax law.

\* \* \*

"We are of the opinion that the tax imposed by the income tax law of this state does not impose a burden on the business or property of plaintiff in any sense repugnant to its rights under the provision of the federal constitution conferring on Congress the right to regulate commerce between the states, \* \* \*"

The trial court in the instant case considered that the decisions *In Re Kansas City Star Company*, 346 Mo. 658, 142 S.W. (2d) 1029, and *Artophone Corporation v. Coale*, 345 Mo. 344, 133 S.W. (2d) 343, were applicable, and based its judgment on these and similarly deter-

mined cases. The statute involved in the two cases last cited is the Missouri income tax statute, and it contains provisions similar to the Colorado income tax statute. However, the Kansas City Star Company case was decided on September 3, 1940, and the Artophone case was decided on November 22, 1939, and our legislature in 1937 was not in position to know the construction which the Missouri courts would place upon the Missouri statute; consequently, the legislature, in enacting our statute in 1937, could not be influenced by these decisions.

Our statute is so similar to the Wisconsin statute as to lead us to believe that the legislature had this statute well in mind when considering the enactment of an income tax law. The Georgia income tax law was construed in the Montag case, supra, by its court of last resort on February 13, 1935, and the United States Glue case, supra, construing the Wisconsin income tax statute, was determined by the supreme court of Wisconsin on June 16, 1915, and this judgment was affirmed in the United States Supreme Court on June 3, 1918.

We approve the principles announced in these two last mentioned cases, holding that a state may impose a nondiscriminatory tax on net income derived from transactions in interstate commerce as well as from other sources without violating any constitutional provision.

These two last mentioned cases construing similar statutes in Georgia and Wisconsin, having been determined prior to the enactment of our Colorado Income Tax Act of 1937, the decisions of our sister courts relative thereto and existing at the time of the adoption of our statute would be very persuasive, if not controlling, upon our courts.

In *Rock Island Refining Co. v. Oklahoma Tax Commission*, 193 Okla. 468, 145 P. (2d) 194, the plaintiff suffered an adverse judgment in its action against the Oklahoma Tax Commission to recover taxes paid under protest. It was plaintiff's contention that under the

income tax statute, Oklahoma could not lawfully collect an income tax on the proceeds realized from sales without the state of Oklahoma. The question, as the supreme court considered it, was: "Has a state the power, under the Federal Constitution, to assess or levy a tax on a domestic corporation measured by its net income derived from both interstate and intrastate commerce?" The pertinent part of the Oklahoma income tax statute involved reads: "A tax is hereby levied upon every person as defined in Section 4 (b), which tax shall be collected and paid, for each taxable year, upon, and with respect to, the entire net income of such person, which is derived from *all property owned and/or business transacted within this State. * * *"* (Italics ours)

The Oklahoma statute also contained a provision for allocation of net income where it was derived from property owned partly within and partly without the state and business done partly within and partly without the state. It was the contention of the Oklahoma tax commission that all of the net income of plaintiff was taxable under the Oklahoma statute, notwithstanding part of the sales were made outside of the state, and it was further contended that the income of plaintiff was not subject to allocation. With respect to the contention of the tax commission last referred to, it is said:

"Our statute was properly interpreted and applied by the commission in this case. We are unable to perceive wherein the tax as here assessed could in any manner interfere with interstate commerce, in the absence of a federal statute to the contrary enacted pursuant to the commerce clause.

"There was no occasion for apportionment here. None of the income was earned elsewhere.

"The statute properly provides a method for the assessment and collection of the state's portion of the tax where the income arises from interstate commerce in cases where our taxing power can attach. But this is not a case for employing that method.

"Since the entire net income of the taxpayer was derived from business transacted within Oklahoma, it was all properly taxable here, and the commission in so assessing the tax did not exceed its authority."

The decision of the Oklahoma supreme court in *Rock Island Refining Co. v. Oklahoma Tax Commission, supra,* was appealed to the supreme court of the United States, and on May 22, 1944, the appeal was dismissed. 322 U.S. 711, 64 Sup. Ct. 1159, 88 L. Ed. 1017.

In *Compania General de Tabacos de Filipinas v. Collector of Internal Revenue,* 279 U.S. 306, 49 Sup. Ct. 304, 73 L. Ed. 704, the petitioner brought an action to recover income taxes alleged to have been illegally exacted. The statute imposed a tax of three per cent annually "Upon the total net income received in the preceding calendar year from all sources within the Philippine Islands by every corporation * * * organized * * * under the laws of any foreign country * * *."

The case was tried upon the stipulation of facts which are reported to be as follows: "That petitioner, a foreign corporation, was licensed to do business in the Philippine Islands and there maintained its principal office and did most of its business; that it owned in the Islands various sugar and oil mills and tobacco factories and was there engaged in buying, selling and exporting these products; that, acting through its Philippine branch, petitioner from time to time during 1922 exported from the Philippine Islands to the United States tobacco, sugar, copra and cocoanut oil, produced, manufactured or purchased by it in the Philippine Islands; that this merchandise ' * * * was sold in the United States by the agency therein of the plaintiff's Philippine branch, the sale being subject to confirmation and absolute control as to price and other terms and conditions thereof, by the plaintiff's Philippine branch; and that from such transactions * * * the plaintiff made a profit * * * ,' which was '* * * accounted for by the plaintiff on its books of account kept in the Philippine Islands as earnings

made by and accruing to the Philippine branch * * *'. It was this net profit on which the tax was levied."

It was petitioner's contention that the merchandise was sold in the United States, and, therefore, the profit derived therefrom was not from sources within the Philippine Islands and was, consequently, not subject to a tax there. In this connection it was said:

"If, in fact, the sales were thus made in the Philippine Islands, we think it unimportant whether the merchandise sold was exported before or after its sale; it could not be seriously contended, as indeed petitioner does not contend, that a profit derived from such transactions would not be subject to the tax. For, in such a case, the entire transaction resulting in a profit, with the exception of the negotiations in the United States preceding the sale, would have taken place in the Philippines. Instead, petitioner asks us to construe the stipulation so as to bring it within the ruling of the Attorney General applied to a state of facts where every act effecting the sale took place outside the taxing jurisdiction. The ambiguous phraseology of the stipulation failing to disclose precisely how the business was done, we may not speculate as to its actual character (citing case).

"The burden is on him who seeks the recovery of a tax already paid to establish those facts which show its invalidity" (citing cases).

Other cases which support us in our holding that the entire net income, under circumstances similar to the instant case, is taxable, are: *Trane Co. v. Wisconsin Tax Commission,* 235 Wis. 516, 292 N.W. 897; *Interstate Bond Co. v. State Revenue Commission of Georgia,* 50 Ga. App. 744, 179 S.E. 599; *Department of Treasury v. Wood Preserving Corp.,* 313 U. S. 62, 61 Sup. Ct. 885, 85 L. Ed. 1188; *International Elevator Co. v. Thoresen, State Tax Commissioner,* 58 N.D. 776, 228 N.W. 192; *Mexican Petroleum Corp. v. Head, Revenue Commissioner,* 64 Ga. App. 529, 13 S.E. (2d) 887.

We do not deem it necessary to discuss sections 16 and 17 because these sections have no application to the instant case.

Under the circumstances, the entire net income of defendant is taxable under the income tax statutes of the state of Colorado, and the court erred in determining otherwise.

The judgment is reversed and the cause is remanded with instructions to the lower court to enter judgment in favor of plaintiffs and against defendant for the deficiency, together with interest and costs.