TRANE COMPANY, Appellant, vs. TAX COMMISSION and another, Respondents.

*May 9—September 10, 1940.*

For the appellant there were briefs by *Arthur T. Holmes* of La Crosse, attorney, and *Grady & Fairchild* of Portage of counsel, and oral argument by *Mr. Holmes* and *Mr. Daniel H. Grady.*

For the respondents there was a brief by the *Attorney General* and *Harold H. Persons,* assistant attorney general, and oral argument by *Mr. Persons.*

A brief was also filed by *Miller, Mack & Fairchild* of Milwaukee, as *amicus curiæ.*

The following opinion was filed June 20, 1940:

MARTIN, J. There is no dispute as to the facts. The sole question is whether appellant is liable for Wisconsin income taxes on its entire net business income during the years 1929 to 1934, inclusive, or only on an apportionment thereof.

Appellant contends that the Tax Commission and the court below erred in not apportioning its net income between business "within and without the state" upon the basis of a proportion of sales "in Wisconsin" to sales "made everywhere" during the years in question, as provided in sec. 71.02 (3) (d), Stats. 1931. Sec. 71.02 (3) (c), (d) provides, in part, as follows:

"(c) For the purposes of taxation income from mercantile or manufacturing business, not requiring apportionment under paragraph 71.02 (3) (d) shall follow the situs of the business from which derived. . . .

"(d) Persons engaged in business within and without the state shall be taxed only on such income as is derived from business transacted and property located within the state. The amount of such income apportionable to Wisconsin may be determined by an allocation and separate accounting thereof, when, in the judgment of the tax commission, that method will reasonably reflect the income properly assignable to this state, but otherwise in the following manner: There shall first be deducted from the total net income of the taxpayer such part thereof (less related expenses, if any) as follows the situs of the property or the residence of the recipient; . . . The remaining net income shall be apportioned to Wisconsin on the basis of the ratio obtained by taking the arithmetical average of the following three ratios:

"1. The ratio of the tangible property, real, personal, and mixed, owned and used by the taxpayer in Wisconsin in connection with his trade or business during the income year to the total of such property of the taxpayer owned and used by him in connection with his trade or business everywhere. . . .

"2. In the case of persons engaged in manufacturing or in any form of collecting, assembling, or processing goods

and materials within this state, the ratio of the total cost of manufacturing, collecting, assembling or processing within this state to the total cost of manufacturing or assembling or processing everywhere. The term 'cost of manufacturing, collecting, assembling or processing within this state and everywhere,' as used herein, shall be interpreted in a manner to conform as nearly as may be to the best accounting practice in the trade or business. . . .

"3. In the case of trading, mercantile, or manufacturing concerns, the ratio of the total sales made through or by offices, agencies, or branches located in Wisconsin during the income year to the total net sales made everywhere during said income year. . . .

"5. As used in this section the word 'sales' shall extend to and include exchange, and the word 'manufacturing' shall extend to and include mining and all processes of fabricating or of curing raw materials. If the income of any such person properly assignable to the state of Wisconsin cannot be ascertained with reasonable certainty by either of the foregoing methods, then the same shall be apportioned and allocated under such rules and regulations as the tax commission may prescribe. . . ."

Appellant is a Wisconsin corporation with its home office in the city of La Crosse from which the general management is conducted. During the period in question, appellant was engaged in the business of manufacturing heating and air-conditioning equipment. All of its manufacturing is done in its factories at La Crosse, and its products are sold exclusively to contractors. A portion of the sales was made directly by the home office; a portion was sold through sales offices located at Milwaukee and La Crosse. The balance of appellant's products was sold to contractors outside of Wisconsin, where sales representatives solicited proposals which were submitted for acceptance at the home office from where shipments were made. The sales representatives outside of the state worked out of offices maintained in seventy cities in the United States and Alaska.

The standard agency contract used by appellant company provided in part:

"The agent shall maintain, at his expense, a suitable equipped sales and service office in the city of . . . For purposes of advertising the company and its products locally, the name of the company shall appear in all transactions for its account, and its name shall appear upon the entrance of said office, and in the telephone and other directories of said city."

Appellant has office equipment in only seven or eight of its branch offices. In some, consigned stocks were maintained. These stocks consisted mostly of merchandise to be used for repair and to assist contractors in beginning jobs until quantity shipments could be made from the factories in La Crosse.

The agency agreements constituting the authority of the agent, except in so far as they were modified by supplemental authority and directions, provided, in part, as follows:

"The sales agent shall have no power to bind the Trane Company in any contract and all proposed contract agreements must be first sent to and approved by the home office at La Crosse, Wisconsin.

"All sales shall be subject to approval at La Crosse, Wisconsin, both as to the materials to be furnished, the time in which it is to be finished, the price and credit."

All sales representatives worked on a commission basis. Price sheets were issued to them from time to time as new products were added to appellant's line, as changes were made in the products, or as prices changed because of market conditions. They were authorized to sell only at prices quoted, however, they could sell at prices higher than those quoted but never lower without authority from the home office.

All the sales representatives were registered as engineers. They contacted architects, engineers, and heating and air-

conditioning contractors in their territories. Through these contacts, when a project came up requiring mechanical equipment, the sales representatives were called in to assist in the designing of the mechanical system and the selection of equipment required. They would prepare a layout or plan which showed the contemplated use of appellant's products and would then present it to the architect, engineer, or heating contractor for approval. But before the sales representatives took further action, the credit of the prospective customer was determined. Each sales representative was supplied with credit reference books and cards entitling him to call upon credit representatives in the different cities in his territory, and with codes from appellant's credit department as to limits. If the prospective customer's credit was not established, then the sales representative could proceed further only with the express consent and approval of the home office. In some instances, the home office approved of the extension of credit and in others it requested its sales representative to offer to sell on a C. O. D. basis only, or on a guarantee of payment or through the furnishing of a surety bond. After the prospective contractor approved of the plan as presented by appellant's sales representative, the latter then selected the list of materials that appellant could furnish or manufacture and made a quotation to supply the material at prices listed. The proposal was not an order, and expressly stated that "all agreements must be in writing, subject to acceptance by the main office at La Crosse, Wisconsin."

Approximately eighty-five per cent of the proposals made by sales representatives were according to pre-established list prices and discounts, and were for catalogue products; these proposals were made without consulting the home office. Approximately fifteen per cent of the proposals were prices which varied from the printed price list and called for products different from those manufactured by appellant;

in such cases, the sales representatives had to secure authority from the home office to make such a proposal. In the case of material or products not included in the catalogue, the home office estimate department estimated the cost and notified the sales representative as to the price that could be quoted. After proposals were made to prospective customers, a copy of the proposal was sent to appellant's home office.

After the sales representative's proposal was made to the prospective contractor-customer, the contractor would bid on the project on the basis of the proposal made by the sales representative. If the contractor's bid was accepted, appellant's sales representative would receive the order from the contractor for the engineering products necessary on the job. The sales representative then rewrote the customer's order on the branch office form and sent it to the home office at La Crosse. When the order was received at La Crosse it was put in process of manufacturing, and the home office sent a confirmation to its branch office and notice to the customer as to when the material would be shipped. Except in instances where the sales were for cash, the customer was billed from the home office. Products were shipped to the customer F. O. B. La Crosse, with freight allowed to destination. When the products were delivered to the customer it was the duty of appellant's salesmen to see that the equipment was installed properly according to plans and specifications, and to test the equipment after the job was completed to see that the equipment complied with the guarantee. The sales representatives would make adjustments and perform any necessary service until the project was turned over by the contractor to the owner.

The total tangible property, real, personal, and mixed, owned and used by appellant in connection with its trade or business during the years in question was located within the state of Wisconsin. All of the manufacturing was done at

the company's factories in La Crosse. In appellant's income tax returns for the years in question, for purposes of apportionment of its income which appellant claims it is entitled to under sec. 71.02 (3) (d), Stats. 1931, appellant used a ratio of one hundred per cent for property and manufacturing; but for sales appellant used in each of the years, a ratio that represented the proportion of sales originating in and made by offices, agencies, or branches located in Wisconsin to the total net sales made everywhere. The sales ratios so determined varied from 6.55% to 25.1% during the years in question.

The statute under consideration, sec. 71.02 (3) (d), Stats. 1931, is in substance the same as sec. 1087m—2, sub. 3, Stats. 1911, which, in so far as here material, provided:

"The tax shall be assessed, levied and collected upon all income, not hereinafter exempted, received by every person residing within the state, and by every nonresident of the state upon such income as is derived from sources within the state; . . . provided, that any person engaged in business within and without the state shall, with respect to income other than that derived from rentals, stocks, bonds, securities or evidences of indebtedness, be taxed only upon that proportion of such income as is derived from business transacted and property located within the state, which shall be determined in the manner specified in subdivision (e) [of subsection 7] of section 1770b, as far as applicable."

The foregoing statute was considered by this court in *United States Glue Co. v. Oak Creek* (1915), 161 Wis. 211, 153 N. W. 241. In that case the plaintiff was a Wisconsin corporation with its principal office at Carrollville, Wisconsin. It was engaged in the business of manufacturing glue, gelatin, grease, and other products. Its products were sold in Wisconsin and in many other states of the Union and in foreign countries. All of its manufacturing was done at its plant in Carrollville where it maintained its general offices. Branch offices were maintained in different states.

At each of these branches, plaintiff carried stocks of goods which in part were manufactured in its factories at Carrollville and shipped by plaintiff to its various branches before sale to customers. Some products were purchased by plaintiff from other manufacturers outside of Wisconsin and shipped direct from the place of purchase to the company's branches or shipped from the place of purchase to the factories at Carrollville and from there shipped to the company's branches. The branch offices were in charge of managers who employed men to solicit orders for the company's products. Some of the orders obtained by salesmen were filled from stocks carried at the branch office, the rest of the orders were sent by the branch managers to the home office and factories at Carrollville and there were filled and shipped. For the purpose of trial, the parties stipulated that the plaintiff's net income for the year 1911 (the year in question), exclusive of that derived from rentals and intangible properties, amounted to $123,884.34 derived from the following sources: (a) $15,999.47 was realized from the manufacture, sale, and delivery of goods from its factory to customers residing in the state of Wisconsin; (b) $65,103.26 was realized from the manufacture, sale, and delivery of goods from its factory to customers residing outside of the state; (c) $31,336.86 was realized from the manufacture of goods at the factory sent to branch houses outside of Wisconsin and the sale and delivery of such goods from the branch house to customers residing outside of the state; (d) $11,444.75 was realized from the purchase of goods in the market outside of the state and shipped from the place of purchase either directly, or by way of plaintiff's plant at Carrollville, to its branch houses, and the sale and delivery of such goods to customers residing outside of Wisconsin.

In determining what proportion of plaintiff's net "business income" was income "derived from business transacted

and property located within the state," within the meaning of sec. 1087m—2, sub. 3, Stats. 1911, and subject to taxes by Wisconsin, the court said (p. 218):

"The plaintiff, as recipient of its corporate income, whatever its source, has a domicile in this state, and the principal part of its property and its business which is employed in the transactions out of which the income issues is located in this state. The statute seeks to tax the part of this income which has its source in this state. The fact that the business so conducted may involve transactions in interstate commerce cannot affect the situs of the income. *Nor does the fact that goods manufactured at Carrollville are sold without the state affect the source of the income.* The income so derived is the result of the business carried on at Carrollville in this state. The place of sale of such products does not change the place of business from this to the state where the goods are sold. The statute does not contemplate such a result and clearly intends that the source of the income is at the place where the business is carried on. The transactions involved in producing the products at the plant at Carrollville and disposing of them through intrastate or interstate transactions are in substance and effect transacting business in this state, and the shipping and delivery of such goods on sales *made at home or abroad,* from either the factory or branch houses to which they had been shipped before sale, are no more than incidents in transacting the business of supplying the articles to customers in their finished state. We cannot, in the light of the nature of the general conduct of the business, assent to the claim that the shipping and delivery of goods, manufactured at the plant, from branch houses are the controlling elements of such transactions and that they give such business a situs without the state. *The manufacture, the management, and the conduct of the business at the home office are the controlling features* in the process of disposing of the article produced at the factory and constitute the source out of which the income issues and give it a situs within the state under the income tax law."

As to the item of $11,444.75 realized from the purchase of goods in the market outside of the state and shipped

from the place of purchase either directly, or by way of plaintiff's factory at Carrollville, to its branch houses, the court said (pp. 218, 219):

"The income derived from goods which were produced and purchased outside of the state and shipped, either directly or by way of plaintiff's factory at Carrollville, to plaintiff's branch houses and thence sold and delivered to customers without the state, *is clearly a separable class of plaintiff's business*. Such business is transacted and located without the state, excepting incidental management from and accounting for the result thereof to plaintiff's principal office at Carrollville. The carrying on of this part of the trade, according to the findings of fact, produced an income which issued out of the business and property located without the state. Under the facts and circumstances showing the manner of conducting this part of the plaintiff's business, it must be held that the income derived therefrom is attributable to the business conducted without the state and hence not taxable under the law."

The court held that all of the plaintiff's income referred to in items (a), (b), and (c) above, was "derived from business transacted and property located within the state." This case was taken to the United States supreme court and the judgment of the lower court was there affirmed. See *United States Glue Co. v. Oak Creek* (1918), 247 U. S. 321, 38 Sup. Ct. 499, 62 L. Ed. 1135.

What constitutes doing business within and without the state under sec. 71.02 (3) (d), Stats. 1931, and what constituted doing business within and without the state under sec. 1087*m*—2, sub. 3, Stats. 1911, is the same, and what is said by the court in the *Glue Case, supra,* is applicable to the facts in the instant case.

Upon the conceded facts and the documentary evidence we must hold that as to its sales, appellant's business is entirely in Wisconsin, and that there can be no apportionment of income dependent on sales in Wisconsin and total sales as provided in sec. 71.02 (3) (d), Stats. 1931.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, without costs, on September 10, 1940.