DEPARTMENT OF TAXATION, Appellant, v. BLATZ BREWING COMPANY, Respondent.

*February 6—March 7, 1961.*

For the appellant the cause was argued by *Harold H. Persons,* assistant attorney general, with whom on the brief was *John W. Reynolds,* attorney general.

For the respondent there was a brief by *Michael, Spohn, Best, & Friedrich,* attorneys, and *John S. Best* and *Frank J. Pelisek* of counsel, and oral argument by *Mr. John S. Best* and *Mr. Pelisek,* all of Milwaukee.

HALLOWS, J. The first question is whether Blatz is "engaged in business" within and without the state within the meaning of sec. 71.07 (2), Stats., for 1945 and 1947. The department contends this means "doing business" and the apportionment of income can only apply between the particular states in which the taxpayer is "doing business" to exempt from the Wisconsin income tax that portion of the net income which is derived from business conducted outside the state. Blatz contends this concept of "doing business" is too narrow a construction of the statute and it is doing business in a tax sense by its activities outside the state under the rule of the companion cases, *Northwestern States Portland Cement Co. v. Minnesota* and *Williams v. Stockham Valves & Fittings, Inc.* (1959), 358 U. S. 450, 79 Sup. Ct. 357, 3 L. Ed. (2d) 421, and specifically the statute only requires, for the application of the apportionment rule, some property physically located outside the state. The department relies on several Wisconsin cases and contends they impliedly hold personal property outside the state does not constitute being engaged in business there.

In *Trane Co. v. Tax Comm.* (1940), 235 Wis. 516, 524, 292 N. W. 897, this court held, relying on *United States Glue Co. v. Oak Creek* (1915), 161 Wis. 211, 153 N. W. 241, the taxpayer was not engaged in business outside the state, as the sales made outside the state resulted in income which was "derived from business transacted and property located within the state," and there could be no apportion-

ment dependent on sales. This case and the *United States Glue Case* represent the older and traditional concept of doing business and of the necessity of assigning a situs or source to business income.

Witness the statement in 161 Wis. at page 218:

"The plaintiff, as recipient of its corporate income, whatever its source, has a domicile in this state, and the principal part of its property and its business which is employed in the transactions out of which the income issues is located in this state. The statute seeks to tax the part of this income which has its source in this state. The fact that the business so conducted may involve transactions in interstate commerce cannot affect the situs of the income. Nor does the fact that goods manufactured at Carrollville are sold without the state affect the source of the income. The income so derived is the result of the business carried on at Carrollville in this state. The place of sale of such products does not change the place of business from this to the state where the goods are sold."

While these cases may, by implication, deny income can have a contributing source in a·broad sense in property located outside the state, that point was not expressly decided. In the *Trane Case,* although there was property outside the state, the taxpayer allocated it all to Wisconsin and thus the question was not presented.

Again in *American Stores Dairy Co. v. Department of Taxation* (1945), 246 Wis. 396, 17 N. W. (2d) 596, this court held all the taxpayer's income was due to business transacted in Wisconsin, although the taxpayer, a subsidiary corporation, engaged in manufacturing evaporated milk in Wisconsin, maintained its business office in Illinois where sales were made to the taxpayer's parent corporation and other office work done. The decision does not discuss the property ratio. The other cases cited by the appellant all express the older idea that in a manufacturing business, sales

are of lesser importance than production and do not determine the source of income or where the business is transacted, or they are decided on other grounds. See *Redwine v. Dan River Mills, Inc.* (1950), 207 Ga. 381, 61 S. E. (2d) 771; *People ex rel. Brighton Mills v. Knapp* (1920), 192 App. Div. 740, 183 N. Y. Supp. 480; *Irvine Co. v. McColgan* (1945), 26 Cal. (2d) 160, 157 Pac. (2d) 847.

Business, in the sense of income tax laws, is produced by a successful combination of elements, among which are capital, labor, management, property, skill, and good judgment. Business transacted is a complex concept. A manufacturing plant with the best product needs a sales force and the best sales organization needs a product. Transacting business is an activity, some of which is vital to the production of income and the rest of varying degrees of importance. The modern concept of transacting business in a tax sense includes most of the activities and elements contributing to the profit or loss of the business. The apportionment rule is an attempt to take into account these activities and elements in allocating income. Although "engaged in business" means something less than the standard which requires a license to do business in a state, still not every "activity" out of the state constitutes engaging in business there within the meaning of sec. 71.07 (2), Stats.

Blatz urges that "engaged in business" means any activity outside the state which would come within the rule of the *Northwestern* and *Stockham Cases,* wherein the United States supreme court found Minnesota and Georgia could tax income derived from interstate-commerce activities within the state. In the *Northwestern Case,* an Iowa corporation with its main office and plant in Iowa, maintained an office in Minnesota with a secretary and salesmen. All orders received were subject to acceptance in Iowa. In the *Stockham Case,* a Delaware corporation had its main office and plant

in Alabama and maintained a sales office in Atlanta, Georgia, with a secretary and a part-time salesman. All orders were subject to approval in Alabama. The court thought there was sufficient "nexus" between the activities in Minnesota and Georgia to allow those states to tax income under their statutes on an apportionment basis. In *International Shoe Co. v. Fontenot* (1958), 236 La. 279, 107 So. (2d) 640, a foreign corporation was held subject to income tax on the ground its sole activity was the presence of 15 salesmen engaged in solicitation of orders. In *Brown-Forman Distillers Corp. v. Collector of Revenue* (1958), 234 La. 651, 101 So. (2d) 70, the activity was conducted through "missionary men" who took orders from wholesalers but not retailers. In these cases, the mere presence of salesmen or solicitors in the state without property therein was sufficient "nexus" for the state to tax income on apportionment basis. However, these cases do not determine the meaning of the statutes of Wisconsin, the domiciliary state.

In the instant case, it is conceded when Blatz maintained branch offices out of the state and made sales therefrom in 1945 and 1949, it was entitled to prorate its business because it was engaged in business within and without the state. All the record shows for 1947 and 1948 is that all sales and manufacturing were in Wisconsin, that Blatz had returnable containers flowing in and out of Wisconsin and located temporarily in Wisconsin and other states, and had neon signs, coolers, and other property outside of Wisconsin. No reliance is placed by Blatz on activities, if any, by so-called salesmen or divisional managers outside the state, nor does the record show what these activities were. Can it be said that because of the nature of this property out of the state, Blatz was "engaged in business" outside the state? We think not, even in a tax sense.

Applying the *Northwestern* doctrine would not have subjected Blatz to income taxes in any other state in 1947 and

1948. The Minnesota statute levied a net income tax on corporations " 'whose business within this state . . . consists exclusively of foreign commerce, interstate commerce, or both.' " The activities of the Iowa corporation consisted of a regular and systematic course of solicitation of orders subject to home-office approval. To handle its activity, the corporation maintained a leased sales office equipped with its own furniture and fixtures, but the case did not turn on the presence of this personal property in Minnesota. In *Stockham,* the foreign corporation had a sales-service office in Georgia for a salesman and a secretary who was the liaison between the home office and the salesman and customers. The salesman carried on the usual solicitation of orders. Other than office equipment, supplies, and advertising literature, the taxpayer had no property in Georgia. The Georgia statute taxed net income of corporations owning property or doing business in the state which was defined in the act as including "any activities or transactions" carried on in the state "for the purpose of financial profit or gain." The *Northwestern Case* held that the tax by Minnesota and Georgia under these statutes was not an interference with the federal commerce power or a violation of the due-process clause, as it imposed a tax under an apportionment formula on that portion of the taxpayer's net income which arose from its activities within the taxing state.

Applying this more-modern concept to the *Glue, Trane,* and *Dairy Cases,* one questions the soundness of these decisions if multiple taxation is to be avoided. However, the Minnesota and Georgia statutes are not the same as Wisconsin's and these cases are not counterpart situations.

The *Northwestern* decision caused apprehension in business circles of more-widespread and increased-tax burdens. Three states, eager for more income, revised their tax laws to conform to the type of law upheld. Representatives of both large and small business appealed to the congress for relief

from the impact of the decision, and the congress enacted Public Law 86–272, 73 U. S. Stat. at L., p. 555. This act, which became effective September 14, 1959, imposed certain restrictions on the type of selling activities of foreign corporations which can be the subject of an income tax, and attempted to provide a definition for the court's term "nexus." It would seem, under this new law, neither *Northwestern* nor *Stockham* would have been liable for state taxes. On this problem, see note, Taxation, State Taxation of Interstate Commerce, 1960 Wisconsin Law Review, 171.

Nor is there merit in the argument that because property out of the state is an element of the apportionment formula that, therefore, the presence of such property out of the state constitutes "engaging in business" there. The presence of the type of property which Blatz had out of the state in 1947 and 1948, did not constitute "engaged in business" outside Wisconsin within the meaning of sec. 71.07 (2), Stats.

On the second question, the department contends the formula in sec. 71.07 (2), Stats., intended to allocate the business income among the sum of the states in which business was done. We do not so construe the statute. Once a taxpayer is "engaged in business" within and without this state, entitling the taxpayer to use the apportionment formula, Wisconsin is restricted to taxing "only on such income as is derived from business transacted and property located within the state." It is no concern of Wisconsin that some of the net business income may be allocated out of the state where, because of different taxing laws or the absence of them, it is not taxed. Nor is there any requirement the taxpayer in using the apportionment formula, must assign income only to those states in which it is doing business, in the general business sense used by the department. Apportionment does not give the department the right to collect the most tax but only the fairest share and that share to be derived from busi-

ness transacted and property in this state. *Standard Oil Co. v. Wisconsin Tax Comm.* (1929), 197 Wis. 630, 223 N. W. 85.

The accounting method used by Blatz to determine the physical situs of the returnable containers within Wisconsin was, as the trial court said, a "factual and sound equitable basis upon which to allocate." Exact precision in the apportioning of income is not required. *Armour & Co. v. Department of Taxation* (1948), 252 Wis. 468, 32 N. W. (2d) 324. The averaging method applied to property which moves in and out of a state has been approved to determine its location for the purpose of taxation. *American Refrigerator Transit Co. v. Hall* (1899), 174 U. S. 70, 19 Sup. Ct. 599, 43 L. Ed. 899; *Johnson Oil Refining Co. v. Oklahoma ex rel. Mitchell* (1933), 290 U. S. 158, 54 Sup. Ct. 152, 78 L. Ed. 238. The action of the board of tax appeals, in holding that in the absence of definite proof, the property factor should be based on sales, was arbitrary and capricious. It follows that the allocation of these containers on sales alone, as was done in the modified additional assessment and approved by the board, or on the basis of 50 per cent to sales and 50 per cent to manufacturing, as now contended by the department, cannot be sustained, because those contentions are based on an erroneous theory and ignore the weight of the property factor in the formula. Such contentions reduce the three-factor formula to a two-factor formula in this case. The department is bound to use the statutory method even though another method may appear more convenient or expedient to it. *Northern States Power Co. v. Tax Comm.* (1941), 237 Wis. 433, 297 N. W. 578. Likewise, the neon signs, coolers, and other personal property should not be apportioned on sales but on their physical location by the method used and as reported by Blatz in its returns. The department's argument that elements in the formula may be changed to fit the con-

cept of "engaged in business," like the taxpayer's argument that "engaged in business" is determined by any element of the formula, is without merit.

The question of whether Blatz's claim for a return for the calendar year of 1945 was timely made was not argued in the briefs. We presume Blatz has accepted the circuit court's decision as it asks this court to affirm the trial court's judgment.

The last question presented is whether the board of tax appeals has the power to increase an assessment over that appealed from. The department contends the general powers of the board, set forth in sec. 73.01 (5) (a), Stats., when read with the first sentence of sec. 71.11 (19), evinces a legislative intent to grant the board power to determine additional tax liability upon the evidence before the board greater than the amount set forth in the notice of assessment appealed from. We think not. The question before the board is not how much additional income tax is owed by the taxpayer for the years under review, but whether the particular assessment made by the department and appealed from is correct. The board, being of statutory creation, has no powers not granted it by the legislature. Certainly sec. 73.01 (5) (a) [1] does not grant the powers contended for, nor does the history of sec. 71.11 (19) indicate such an intent. This section, prior to the creation of the board as a separate agency by ch. 412, Laws of 1939, provided that if the tax was increased, the commission shall proceed to collect it. At that time, the tax commission was both the assessing and reviewing authority. We believe the power to increase the tax by the commission was in its capacity as an assessing

[1] "73.01 (5) *Powers and duties defined.* (a) Subject to the provisions for judicial review contained in the statutes, the board shall be the final authority for the hearing and determination of all questions of law and fact arising under the tax laws of the state, except such as may be otherwise expressly designated. . . ."

authority. The section was put in its proper place in the statute by the revision of ch. 71, Stats., by ch. 318, Laws of 1947. This section refers not to the power of the board but to the power of the department to increase taxes by the method of audits.

Under sec. 73.01 (6) (a), Stats., the petition filed with the board in income matters is "for review of the action of the department or assessor." The section does not contemplate the department, in denying such application for the abatement or claim for refund, can change its position and assert different or new items of additional tax before the board and the board can reassess an additional tax. The proper procedure for this is an audit by the department if the year is still open. The board is reviewing the action of the department or assessor, not performing their functions.

The functions and powers of the board are discussed in *Kaukauna v. Department of Taxation* (1947), 250 Wis. 196, 26 N. W. (2d) 637, and limited by sec. 73.01 (6), Stats., to specific types of taxes and then only by and when the procedure therein specified is followed. To allow the board to assess, as urged by the department in this case, would not be following the procedure therein. The application for review by the board of an income-tax assessment does not allow the department to open "Pandora's box."

While sec. 76.13 (3), Stats., expressly grants the board the power to increase taxes of railways and public utilities over the amount fixed by the department, no comparable provision is found in the income tax law. In *Department of Taxation v. Ansul Chemical Co.* (1951), 260 Wis. 96, 49 N. W. (2d) 893, concurring opinion, the department's contention was rejected on the ground there was no statutory authority for the contention. We now hold the board of tax appeals has no power to increase an income-tax assessment over the amount determined by the department in the notice of assessment appealed from.

This opinion requires reversal of only that part of the judgment of the circuit court based on its decision that Blatz was doing business outside the state for the years 1947 and 1948, and the affirmance of the other matters decided.

*By the Court.*—That part of the judgment of the circuit court adjudging the taxpayer respondent was engaged in business within and without Wisconsin for the years 1947 and 1948 is reversed. The rest of the judgment is affirmed. The circuit court is directed to so modify its judgment and refer the record back to the board of tax appeals for further proceeding consistent with this opinion.