WISCONSIN & MICHIGAN STEAMSHIP COMPANY *v.*
CORPORATION & SECURITIES COMMISSION.

1. TAXATION—CORPORATE FRANCHISE FEE—EXERCISE OF PRIVILEGE.
   The State corporate franchise fee is not an ad valorem tax on
   property, an income tax, a gross receipts tax, nor a sales tax,
   but is a fee, imposed by the State, upon domestic as well as
   foreign corporations, for the privilege of exercising corporate
   franchises within this State irrespective of whether the cor-
   poration chooses actually to exercise such privilege during any
   taxable period (CLS 1956, §§ 450.304, 450.305c).

2. CORPORATIONS—FOREIGN   CORPORATIONS—TAXATION—INTERSTATE
   BUSINESS—INTRASTATE BUSINESS.
   The State may not impose a charge upon a foreign corporation
   for the privilege of doing an interstate business within the
   State but it may impose a State corporate franchise fee for the
   privilege of exercising the corporate franchise by doing an in-
   trastate business within the State (US Const, Art 1, § 8; CLS
   1956, §§ 450.304, 450.305c).

3. COMMERCE—INTERSTATE COMMERCE—STATES.
   A State does not have the power to grant or deny the right to
   engage in interstate business within its borders (US Const,
   Art 1, § 8).

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 51 Am Jur, Taxation § 793 *et seq.*
   State excise, privilege, or franchise tax upon foreign corporation as
   affected by commerce clause. 105 ALR 11.
[2, 4–6, 9] 51 Am Jur, Taxation § 839 *et seq.*
   State excise, privilege, or franchise tax upon foreign corporation
   as affected by commerce clause. 105 ALR 11.
[3] 11 Am Jur, Commerce §§ 20, 21.
[7, 8] 51 Am Jur, Taxation § 808 *et seq.*
   State excise, privilege, or franchise tax upon foreign corporation
   as affected by commerce clause. 105 ALR 11.
[10] 5 Am Jur 2d, Appeal and Error § 1009; 14 Am Jur, Costs § 91.

4. CORPORATIONS—FOREIGN CORPORATIONS—INTRASTATE BUSINESS—FRANCHISE FEE.

A foreign corporation which voluntarily applies for the privilege of doing an intrastate business within this State is subject to the statutory requirement that it pay a franchise fee therefor (CLS 1956, §§ 450.304, 450.305c).

5. TAXATION — FOREIGN CORPORATIONS — INTRASTATE BUSINESS — FRANCHISE TAX—FORMULA—DISCRIMINATION

An interstate-commerce factor may be used in the allocation formula for determining the portion of paid-up capital and surplus allocable to this State for computation of a franchise tax for the right of a foreign corporation to carry on intrastate business in this State, where there is no showing that such formula reaches an unreasonable or discriminatory result (US Const, Art 1, § 8; CLS 1956, §§ 450.304, 450.305c).

6. SAME—INTRASTATE BUSINESS—FORMULA.

A State may tax the privilege of carrying on intrastate business and, within reasonable limits, may compute the amount of the charge by applying the tax rate to a fair proportion of the taxpayer's business done within the State, including both interstate and intrastate (US Const, Art 1, § 8).

7. SAME—INTRASTATE BUSINESS—ANNUAL FRANCHISE FEE—EXERCISE OF PRIVILEGE.

Whether or not a corporation actually exercises its voluntarily-sought privilege to do an intrastate business within this State makes no difference in the basis for determination of the amount of the annual franchise fee payable (CLS 1956, §§ 450.304, 450.305c).

8. SAME—INTRASTATE BUSINESS—CAPITAL POTENCY OF OUT-OF-STATE ASSETS—PRIVILEGE FEE.

The weight, in determining the value of the privilege to do intrastate business, given the capital potency of property beyond the State boundaries is but a recognition of the very real effect its existence and availability has upon the value of the privilege granted within the taxing State, whether or not used in the conduct of intrastate business (CLS 1956, §§ 450.304, 450.305c).

9. SAME—CARRIERS BY WATER—INTRASTATE BUSINESS—FRANCHISE FEE—FORMULA.

The annual franchise fee of a foreign corporation operating as a carrier of passengers or cargo by water and which had voluntarily sought the privilege of doing an intrastate business

within this State was properly measured by a formula taking into account tonnage of revenue passengers and revenue cargoes received and discharged in this State and everywhere (CLS 1956, §§ 450.304, 450.305c).

10. Costs—Construction of Statutes and Constitution.

No costs are awarded on appeal from the corporation tax appeal board, where questions involved are construction of statutes and Constitution affecting the State's revenues (US Const, Art 1, § 8; CLS 1956, §§ 450.304, 450.305c).

Appeal from Corporation Tax Appeal Board. Submitted June 4, 1963. (Calendar No. 4, Docket No. 49,718.) Decided September 4, 1963. Rehearing denied October 9, 1963. Certiorari denied by supreme court of the United States February 17, 1964.

Consolidated appeals by Wisconsin & Michigan Steamship Company, a Wisconsin corporation, for refund of payments in years 1952–1954 and of determination by the Corporation & Securities Commission of annual corporate franchise or privilege fees for the years 1956–1959. Computations of franchise fees held correct and determination made of sums owing. Plaintiff appeals. Affirmed.

*Foster, Meadows & Ballard* (*Sparkman D. Foster* and *John A. Mundell, Jr.,* of counsel), for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *T. Carl Holbrook* and *William D. Dexter,* Assistant Attorneys General, for defendant.

Souris, J. Appellant steamship company is a Wisconsin corporation carrying passengers, automobiles, and other freight across Lake Michigan between the ports of Milwaukee, Wisconsin, and Muskegon, Michigan. In 1941, *upon its own application,* it was admitted to do intrastate business within Michigan. From 1952 through 1959, it filed the annual reports required by law to be filed with the corporation

and securities commission by every domestic and foreign profit corporation granted the privilege of doing such business within this State. Section 4 of PA 1921, No 85, as amended (CLS 1956, § 450.304 [Stat Ann 1959 Cum Supp § 21.205]). This appeal from the corporation tax appeal board concerns the amount due the State during those years (except 1955) as appellant's annual franchise fee payable at the time of filing its annual reports.

Appellant does not claim that the State seeks to impose a tax upon it, a foreign corporation, for the privilege of conducting its interstate business in Michigan. Nor does the State claim in this case that it could do so lawfully. Instead, appellant *voluntarily* applied for admission to do business locally within this State and was granted that privilege. While appellant concedes the State may charge it the statutory minimum fee of $10 annually for the local privilege granted notwithstanding its professed failure to date to exercise the granted privilege, it denies the State's right to charge it a privilege fee based upon any formula which takes into account any of the appellant's interstate business. Appellant and the State spend considerable effort in arguing whether appellant's activities in Michigan constitute exercise of its local privilege. Were this a case in which the State sought to compel appellant to qualify for admission and to pay a privilege fee therefor on the ground that its activities in Michigan constituted local business, we would be required to resolve the parties' argument. However, this is not such a case. Appellant does not deny that it is liable for some fee for its voluntarily acquired privilege, whether exercised or not. The only question is its amount and the answer to that question does not depend upon whether or to what extent appellant engages in what may be called purely local business.

Michigan's annual franchise fees are imposed alike upon domestic corporations and foreign corporations admitted to do business within the State. Corporations, both domestic and foreign, not maintaining a regular place of business outside this State, other than a statutory office, paid, during the period here in controversy, an annual privilege fee of 4 mills upon each dollar of their entire paid-up capital and surplus.[1] Except for certain classes of carriers, of which appellant is one, other corporations are required to pay annual franchise fees measured by that proportion of their paid-up capital and surplus attributable to Michigan in accordance with an apportionment formula known as the Massachusetts formula.[2] The annual franchise fees of motor carriers of property and all carriers by water, such as appellant, whether domestic corporations or foreign corporations admitted to do business in Michigan, are measured by the apportionment formula set forth in the margin.[3] This formula provides for the allocation of a portion of the carrier's paid-up capital and surplus to Michigan, and thereby subject to Michigan's 4-mill franchise fee rate, in proportion to the ratio which the carrier's total tonnages of revenue passengers[4] and cargo received or dis-

---

[1] CLS 1956, § 450.305 (Stat Ann 1961 Cum Supp § 21.208).

[2] *Ibid.* The statutory provision is reproduced and described by Mr. Justice TALBOT SMITH in *Cleveland-Cliffs Iron Co.* v. *Corporation & Securities Commission*, 351 Mich 652, 672–674.

[3] "(1) In the case of motor carriers of property, and carriers by water, the annual franchise fee shall be measured by that portion of the corporation's paid-up capital and surplus as the sum of the tonnage of revenue passengers and revenue cargo first received or finally discharged by the carrier within this State is to the total of such tonnage so received and so discharged by such carrier within and without this State." CLS 1956, § 450.305c (Stat Ann 1961 Cum Supp § 21.208[3]).

[4] Although the attorney general tells us in his brief that the statutory reference to "tonnage of revenue passengers" has been construed to refer "to the number of passengers, rather than to their gross weight", we note from the appellant's annual reports filed as exhibits that weight was in fact used, a hypothetical average of 150

charged within Michigan bears to its total tonnages received and discharged everywhere.

It is appellant's claim that inasmuch as it engaged solely in interstate commerce in Michigan, the annual franchise fee claimed from it by the State, determined in accordance with the statutory formula which takes into account appellant's interstate tonnages, constituted a direct burden by the State on interstate commerce in contravention of the commerce clause of the Federal Constitution, Art 1, § 8. Relying upon *Gartland Steamship Company* v. *Corporation & Securities Commission*, 339 Mich 661, and *Panhandle Eastern Pipe Line Company* v. *Corporation & Securities Commission*, 346 Mich 50, appellant argues that none of its interstate passenger and cargo tonnages should have been considered in computing the apportionment factor to be applied to its paid-up capital and surplus for determining what portion thereof was subject to the 4-mill franchise fee rate. Since appellant's entire business in Michigan, according to its view, was in interstate commerce, it contends that none of its tonnage properly could be taken into account and that the apportionment factor under such circumstances should have been zero. That result, of course, would have relieved appellant of all liability under the statutory formula (although appellant concedes liability for the annual $10 minimum fee required by CLS 1956, § 450.304 [Stat Ann 1959 Cum Supp § 21.205]).[5] In support of its contention that inclusion of its interstate tonnage in application of the statutory apportionment formula results in a direct burden by the State upon interstate commerce forbidden by the

pounds per passenger. The matter is not important to the issue presented by this appeal.

[5] Implicit in appellant's concession of liability for the annual $10 minimum franchise fee is its recognition that the State properly may charge some fee, at least when the franchise granted was voluntarily sought, whether or not it was actually exercised.

commerce clause, appellant cites *Spector Motor Service, Inc.,* v. *O'Connor,* 340 US 602 (71 S Ct 508, 95 L ed 573); *Cooney* v. *Mountain States Telephone & Telegraph Co.,* 294 US 384 (55 S Ct 477, 79 L ed 934); and *Ozark Pipe Line Corporation* v. *Monier,* 266 US 555 (45 S Ct 184, 69 L ed 439), among many others.

Michigan's corporate franchise fee is not an ad valorem tax on property, nor is it an income tax, a gross receipts tax nor a sales tax. Keeping in mind what Michigan's franchise fee is not, it may be conceded that the State may not otherwise impose a charge upon appellant for the privilege of doing an interstate business in Michigan. For this proposition of law *Spector, Cooney,* and *Ozark, supra,* relied upon by appellant, are only a few of the authorities that may be cited. See *Duluth, S. S. & A. R. Co.* v. *Corporation & Securities Commission,* 353 Mich 636, at p 655 (appeal dismissed and certiorari denied, 359 US 310 [79 S Ct 876, 3 L ed 2d 831]). But these authorities are inapposite to determination of the validity of the privilege fee sought to be charged to this appellant.

As we have noted before, it is a fee imposed by the State, upon domestic as well as foreign corporations, for the *privilege* of exercising corporate franchises *within* this State. *Union Steam Pump Sales Co.* v. *Secretary of State,* 216 Mich 261; *Detroit International Bridge Co.* v. *Corporation Tax Appeal Board of Michigan,* 287 US 295 (53 S Ct 137, 77 L ed 314); *Cleveland-Cliffs Iron Co.* v. *Corporation & Securities Commission,* 351 Mich 652, and *Duluth, supra.* The fee charged is for the privilege granted, as the legislature itself has stated, "irrespective of whether any such corporation chooses to actually exercise such privilege during any taxable period." CLS 1956, § 450.304 (Stat Ann 1959

Cum Supp § 21.205). See *Holland Hitch Company* v. *State of Michigan,* 318 Mich 474, 479.

It is not the privilege to do interstate business in Michigan for which appellant applied to the State and for the grant of which the State seeks to charge it an annual fee. Its right to engage in such interstate business in Michigan is not subject to the State's grant or denial. Appellant sought, and was granted, the privilege to do *intrastate* business in Michigan.[6] Whether or not appellant actually exercised its corporate franchises in Michigan in the conduct of intrastate business, it was granted the privilege to do so, upon its own application, and, so,

---

[6] In view of appellant's contention that its business is "100% interstate", one wonders why appellant voluntarily applied, in 1941, for the privilege of doing intrastate business in Michigan and then, assertedly, never exercised the privilege granted. An examination of Wisconsin law suggests a possible reason for the seemingly inconsistent course followed by appellant. 1939 Wis Stat § 71.02(3)(d) provided that "Persons engaged in business within and without the State shall be taxed only on such income as is derived from business transacted and property located within the State." (This provision is the same today; see West's Wis Stat Ann § 71.07[2].) In *Trane Co.* v. *Tax Commission* (1940), 235 Wis 516 (292 NW 897), the Wisconsin supreme court held that the entire income of a Wisconsin manufacturing corporation was derived from business transacted and property located within the State, and so subject to Wisconsin's income tax notwithstanding that nearly 1/3 of the corporation's net income accrued from sales originated by sales representatives located outside of the State. For a discussion of other Wisconsin cases construing the statutory language in such a manner as to subject all of a corporation's income to the Wisconsin income tax, even though the corporation engaged in activities in other States, see *Department of Taxation* v. *Blatz Brewing Co.* (1961), 12 Wis 2d 615 (108 NW2d 319). Although most of those cases involved manufacturing corporations, still the judicial attitude exhibited in those cases may have induced appellant to try to acquire all possible indicia of engaging in business outside of Wisconsin in order to qualify for the apportionment benefits of Wisconsin's income tax law. One means by which it could do this was to obtain the privilege of doing intrastate business in Michigan. As the Wisconsin court pointed out in *Blatz, supra,* 623, "Although 'engaged in business' means something less than the standard which requires a license to do business in a State, still not every 'activity' out of the State constitutes engaging in business there within the meaning of § 71.07(2)." Thus, appellant could argue that its qualification to do business in Michigan was evidence of its having met, and, indeed, having exceeded, the standard required to be "engaged in business" in another State.

must pay.   As Mr. Justice Edwards pointed out in *Duluth*, 353 Mich 636, at p 657, the United States supreme court has frequently upheld such State privilege or franchise fees levied upon the right to do intrastate business as not offensive to the commerce clause.   *St. Louis-San Francisco R. Co.* v. *Middlekamp*, 256 US 226 (41 S Ct 489, 65 L ed 905); *Hump Hairpin Manfg. Co.* v. *Emmerson*, 258 US 290 (42 S Ct 305, 66 L ed 622); *International Shoe Co.* v. *Shartel*, 279 US 429 (49 S Ct 380, 73 L ed 781); *Ford Motor Co.* v. *Beauchamp*, 308 US 331 (60 S Ct 273, 84 L ed 304); *International Harvester Co.* v. *Evatt*, 329 US 416 (67 S Ct 444, 91 L ed 390); *Interstate Oil Pipe Line Co.* v. *Stone*, 337 US 662 (69 S Ct 1264, 93 L ed 1613).   The only meritorious issue before us is whether Michigan may determine the amount of such privilege fee by reference to appellant's total business transacted in Michigan which, for our purposes we may assume, as appellant claims, was solely interstate in character, or whether it may be charged a franchise fee in excess of the $10 minimum fee provided by the statute only when it actually conducts intrastate business in Michigan and then by reference only to such intrastate business.

The *Gartland Case*, 339 Mich 661, seemingly supports appellant's contention that interstate business must be excluded from consideration in determining the apportionment formula used in computing the franchise fee.   *Panhandle*, 346 Mich 50, likewise seemingly supports appellant's contention.   In the *Duluth Case*, 353 Mich 636, however, this Court severely limited the opinions in *Gartland* and *Panhandle* and, realistically considered, overruled their holdings to the extent that they could be construed to mean what appellant claims for them here.[7]   Our

---

[7] "Both *Gartland* and *Panhandle* opinions, however, relied upon *Cooney* v. *Mountain States T. & T. Co.*, 294 US 384 (55 S Ct 477, 79 L ed 934), for constitutional authority.   Both failed to distinguish

majority in *Duluth* expressly held, *Gartland* and *Panhandle* notwithstanding, "that there is no constitutional barrier to the use of an interstate-commerce factor in the allocation formula for determining the portion of paid-up capital and surplus allocable to Michigan for computation of a franchise tax for the right to carry on intrastate business in Michigan where, as here, there is no showing that such formula reaches an unreasonable or discriminatory result." 353 Mich 636, at p 665.

The United States supreme court expressed the principle affirmatively in *Spector Motor Service, Inc.*, v. *O'Connor*, 340 US 602, 609, 610 (71 S Ct 508, 95 L ed 573), as it relates to a taxpayer engaged in both intrastate and interstate commerce:

"A State may tax the privilege of carrying on intrastate business and, within reasonable limits, may compute the amount of the charge by applying the tax rate to a fair proportion of the taxpayer's business done within the State, including both interstate and intrastate."

In *Cleveland-Cliffs Iron Company* v. *Corporation & Securities Commission*, 351 Mich 652, the taxpayer challenged not the apportionment formula utilized in determining what portion of its paid-up capital and surplus was allocable to Michigan for annual franchise fee purposes but, rather, the inclusion in its capital account of stock investments claimed to be separable from its Michigan operations. Invoking the provisions of CLS 1956, § 450.305e (Stat Ann 1961 Cum Supp § 21.208[5]),[8] Cleveland-Cliffs

---

between the direct taxation of *interstate* commerce (which *Cooney* ruled out) and the employment of an interstate-commerce factor in the formula for determining the amount of paid-up capital and surplus to be allocated to Michigan in computing the fee to be assessed for doing *intrastate* business in Michigan." 353 Mich 636, at p 665.

[8] Appellant here, unlike Cleveland-Cliffs, did not seek adjustment of its franchise fee liability by claiming inequity correctable by administrative action authorized by this statutory provision.

sought to exclude such investments from the paid-up capital and surplus *base* to which the apportionment factor is applied. The Court's majority carefully considered the nature of the privilege fee involved saying, at p 682: "We are taxing the privilege of carrying on intrastate activities. It is thus completely pointless for plaintiff to argue that when it came into this State it 'did not apply for admission to the State of Michigan with respect to holding investments in steel stocks.' Nor did it specifically, with respect to its iron ore holdings in Minnesota, or to its office furniture in Cleveland. But we are not taxing these things. We are taxing the value of the exercise of a privilege in this State and we ascertain that value through the application of property, payroll, and sales factors to the fair average stock value or the paid-up capital and surplus."

The proofs disclosed that Cleveland-Cliffs' business activities in Michigan, apparently including intrastate as well as interstate activities, were extensive and constituted a substantial part of its total business. Unlike the case at bar, the Court there was dealing with a taxpayer concededly actually exercising the granted privilege. As we have noted above, however, the franchise fee is payable in this State whether or not the privilege is exercised. And whether or not the privilege is exercised does not under our statute make any difference in the basis for determination of the amount of the annual fee payable either by a domestic or a foreign corporation nor, as we have previously said in *Duluth,* 353 Mich 636, at p 665, is there any reason constitutionally to bar use of interstate-commerce factors in making such determination.

Whether or not the privilege granted a taxpayer to do an intrastate business is exercised has nothing whatever to do with the right of a State, unhampered

by the commerce clause, to charge for such privilege a fee based upon a reasonably allocated portion of the taxpayer's capital and surplus. What Michigan says to the taxpayer, in effect, is this: "Separate and apart from your unquestioned right to exercise your corporate franchises in interstate commerce within this State, without imposition by this State of a fee for the exercise of that right, you may also pursue your business within this State in matters not involving interstate commerce, but only upon payment of a fee for that privilege. That fee will be measured by determination of that portion of your total paid-up capital and surplus available for such intrastate business, whether or not the privilege actually is exercised by you." In *Ford Motor Co.* v. *Beauchamp,* 308 US 331 (60 S Ct 273, 84 L ed 304), relied upon and quoted by our majority in *Cleveland-Cliffs,* 351 Mich 652, at pp 692, 693, the United States supreme court, at p 336, recognized the constitutional propriety of measuring for fee purposes the worth of such local privilege by the "financial power" or capital potency available for use within the taxing State upon exercise of the privilege granted:

"In a unitary enterprise, property outside the State, when correlated in use with property within the State, necessarily affects the worth of the privilege within the State. Financial power inherent in the possession of assets may be applied, with flexibility, at whatever point within or without the State the managers of the business may determine. For this reason it is held that an entrance fee may be properly measured by capital wherever located. The weight, in determining the value of the intrastate privilege, given the property beyond the State boundaries is but a recognition of the very real effect its existence has upon the value of the privilege granted within the taxing State."

It is not now open to dispute that when such intra-state privilege is exercised by a taxpayer the fee charged for such privilege may be based upon a portion of the taxpayer's capital and surplus, wherever located, allocated in the manner provided by Michigan's statute. *Ford Motor Co.* v. *Beauchamp; Duluth;* and *Cleveland-Cliffs, supra,* and cases cited and discussed in *Duluth,* at pp 660–663 and in *Cleveland-Cliffs,* at pp 690–698. Even in such cases in which the local privilege actually has been exercised, the privilege fee is determinable not by allocation to the taxing State of that portion of the corporate taxpayer's capital and surplus actually utilized therein but, rather, by allocation of that portion of its capital and surplus reasonably available for such use. There is no constitutional reason, absent discrimination between domestic and foreign corporations, why a State may not determine corporate franchise fees on the basis of the potential capital,—the financial power or capital potency,—reasonably available to a corporation for use within the taxing jurisdiction, whether or not actually so used.

The statutory scheme of taxation discloses that the incidence of Michigan's corporate franchise tax is that portion of the taxpayer's paid-up capital and surplus actually utilized in Michigan for any purpose,—therefore available for use here in exercise of its local privilege,—and thus, theoretically at least, not available for use elsewhere nor subject to a similar tax in other States. Apportionment of a multi-State corporation's capital and surplus is accomplished in Michigan in several ways depending upon the nature of the taxpayer's business.[9] For most taxpayers, this apportionment is determined

[9] See CLS 1956, §§ 450.305a–450.305d (Stat Ann 1961 Cum Supp §§ 21.208[1]–21.208[4]).—REPORTER.

by formula taking into account the taxpayer's property, payroll, and sales in Michigan and everywhere. For carriers by aircraft, the apportionment is determined by formula taking into account both revenue tons handled and originating revenues in Michigan and everywhere. Railroads' franchise fees are determined by use of another formula, as are the fees of certain financial institutions and the fees of motor carriers of passengers. Finally, the franchise fees of motor carriers of property and carriers of passengers or cargo by water, with which we are here concerned, are determined by formula taking into account tonnage of revenue passengers and revenue cargoes received and discharged in Michigan and everywhere.

Contrary to appellant's assertions, the various formulae involved in the apportionment process do not result in the imposition of the franchise fee upon the taxpayer's property, payroll, sales or upon any other factor referred to in those formulae. See *Cleveland-Cliffs*, 351 Mich 652, at p 682. The references to property, payroll, sales, revenue tons, originating revenues, and passenger and cargo tonnages have as their sole objective establishment of a realistic standard for allocating a reasonable portion of the taxpayer's capital and surplus to the taxing State as a base for imposition of its franchise fee rate.

Having concluded that a State may charge its corporate franchise fee to a foreign corporation granted local privileges, whether or not actually exercised, and since the amount of the fee charged by Michigan is not dependent upon whether, and to what extent, intrastate business is actually conducted in Michigan, it is not necessary to review the corporation tax appeal board's finding that appellant was engaged in such intrastate business during the periods involved in this appeal.

Affirmed.  No costs, there being involved statutory and constitutional provisions affecting the State's revenues.

CARR, C. J., and DETHMERS, KELLY, BLACK, KAVANAGH, and O'HARA, JJ., concurred.

SMITH, J., did not sit.