Applied Power Industries, Inc., Respondent, v. Department of Taxation, Appellant.

*September 28—October 27, 1964.*

220

222

For the appellant the cause was argued by *Harold H. Persons,* assistant attorney general, with whom on the briefs was *George Thompson,* attorney general.

For the respondent there was a brief by *Whyte, Hirschboeck, Minahan, Harding & Harland,* and *A. William Asmuth, Jr.,* all of Milwaukee, and oral argument by *Mr. Asmuth.*

FAIRCHILD, J. 1. *Is the taxpayer engaged in business without the state?* Sec. 71.07 (2), Stats., allowing a taxpayer to apportion his income, applies only to persons "engaged in business within and without the state." The Department of Taxation contends that the taxpayer is not "engaged in business . . . without the state" and therefore is not entitled to apportion its income.

It is clear that the mere presence of promotional people or the engagement in promotional activities in other states is not sufficient to constitute the taxpayer as doing business (under our income tax statute) without Wisconsin. Nor does the mere presence of corporate property in other states constitute a taxpayer as doing business without the state.[1] Here, however, there are additional activities in California and New York.

The property stored in New York and California is owned by the taxpayer. It is not property merely incidental to the derivation of income, as may be said of the property located outside the state in the *Blatz Case*. It is rather the very product, the sale of which will produce the income sought to be taxed. The property is delivered to customers of the taxpayer by the warehousemen pursuant to orders placed directly with the warehousemen. However, these sales are not made for the account of the warehousemen; the warehousemen at no time assert ownership of the goods. The warehousemen exercise no discretion as to the price of the goods; that price is set at the main office. The warehousemen exercise no discretion as to the ultimate receivers of the goods; the eligible customers and the maximum amounts which may be delivered to them are set by the taxpayer. The taxpayer thus rents space in New York and California, stores unsold goods which it owns there, has the goods sold

---

[1] *Department of Taxation v. Blatz Brewing Co.* (1961), 12 Wis. (2d) 615, 108 N. W. (2d) 319.

and delivered to its customers by the warehousemen there. There is no contract of sale between taxpayer and one of these customers until the order is accepted and filled at the warehouse. The contract is made by the warehousemen on the taxpayer's behalf. We are of the opinion that the warehousemen's activities as agents of the taxpayer in entering into and fulfilling contracts for the taxpayer are sufficient to constitute the taxpayer as engaged in business (under our income tax statute) in New York and California.

The department contends that the taxpayer is not itself engaged in business in those states. It argues that the only business related to the taxpayer in New York and California is being conducted by the warehousemen, and that by the terms of the warehousing agreements the warehousemen are not to be construed to be agents or employees of the taxpayer. But, as the trial court held, a person may be the agent of another for one purpose and not for another. If the independence of the warehousemen from control by the taxpayer be sufficient to insulate taxpayer from liability for torts of the warehousemen in general, the warehousemen are, nevertheless, the taxpayer's agents in effecting sales. The warehousemen did not sell goods for their own account. They delivered goods to the taxpayer's customers upon orders placed with them to a specified limit. In accepting and filling orders, they did so on behalf of the taxpayer and bound the taxpayer thereto. They performed functions which would otherwise have been performed by employees of the taxpayer. They did it as part of the taxpayer's business. They held themselves out as representatives of the taxpayer, used its stationery, and operated in its name. They had the power, and indeed it was their function, to enter into contracts in the name of the taxpayer. We are of the opinion that these activities of the warehousemen constituted the doing of income-producing business by the taxpayer itself in the states in which the warehouses were located.

*2. Were the orders filled by the warehousemen sales made through or by offices located in Wisconsin?* Sec. 71.07 (2), Stats., provides that persons engaged in multistate business activity are to be taxed "only on such income as is derived from business transacted and property located within the state." It affords ratios for determining the amount of income to be apportioned to Wisconsin. The third ratio is as follows:

"(c) In the case of trading, mercantile or manufacturing concerns the ratio of the total sales made through or by offices, agencies or branches located in Wisconsin during the income year to the total net sales made everywhere during said income year."

The department contends that the sales in question were actually made through or by the taxpayer's main office in Wisconsin. It relies on the facts that the warehousemen may fill orders only of customers whose credit has been approved by the main office and only to the extent of such approval, that the sale price is set by the main office, and that the billing and collection work is handled by the main office.

The court recently dealt with the sales ratio of sec. 71.07 (2) (c), Stats., in *Globe-Union, Inc., v. Department of Taxation.*[2] In the *Globe-Union Case* the taxpayer delivered its products from its factories located in many states to customers in many states. The sales were made pursuant to long-term, comprehensive, written agreements with its large customers by which the taxpayer agreed to manufacture and sell to the customers a stated percentage of the customers' annual requirements of the types of products manufactured by the taxpayer. The agreements were negotiated by the Wisconsin officers in addition to other activities of the Wisconsin office such as formulating price structure, making

---

[2] (1963), 20 Wis. (2d) 213, 121 N. W. (2d) 894.

cost determinations, and the handling of payments and book-keeping. We held that the sales were properly treated as being made through the Wisconsin office.

The factor distinguishing the *Globe-Union Case* from the case at bar is the absence here of overriding contracts negotiated in Wisconsin which were merely performed from time to time by deliveries from inventories located outside the state.

In the case at bar, although the main office sets the prices, does the billing, and operates as a credit manager, no sale, no binding contract, no actionable transaction, exists until an order is placed with the warehousemen. The warehousemen fill an order if it comes within the limit set by the taxpayer at the price set by the taxpayer, but do not check with the taxpayer before entering into the contract. They are in effect agents of the taxpayer empowered to make sales in their respective states though limited in their authority.

We are of the opinion that for the purpose of our apportionment statute the sales from the warehouses were not made by or through the Wisconsin office. We agree with the determination reached by the learned trial court.

*By the Court.*—Judgment affirmed.

WILKIE, J., took no part.